## IN THE UNITED STATES DISTRICT
## COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WOODLAND DRIVE LLC, | |
| Plaintiff, | |
| v. | Case No.:  1:19-cv-00750-CJN |
| JAMES COURTOVICH, | |
| Defendant. | |

## DEFENDANT'S OPPOSITION TO
## PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

Defendant James Courtovich ("Defendant"), by and through counsel, hereby opposes the Motion for Default Judgment [Dkt. No. 9] filed by Plaintiff Woodland Drive LLC ("Plaintiff"), and states as follows:

### FACTUAL BACKGROUND

Defendant has known Simon Charlton ("Charlton"), the principal of Plaintiff for several years.  In or around the end of 2014, Defendant and Charlton discussed an investment in a business venture of Defendant by an entity Charlton represented  In March 2015, that entity wired four million dollars to Defendant, which he was to use to purchase a property for the venture and for investment in the venture.

Several months later in August 2015, Plaintiff was incorporated in Delaware.  In May 2016, Plaintiff and Defendant entered into a security agreement that memorialized some, but not all, of the details regarding the investment by the related entity and granted a security interest to Plaintiff in the property purchased with the investment.

Subsequently, a business dispute arose between Defendant and Charlton.  Through their respective counsel, Defendant and Charlton attempted to negotiate a settlement of the dispute.  In

April 2018, Charlton, through Plaintiff Woodland Drive, first filed suit against Defendant in this Court.  A few weeks later, Plaintiff voluntarily dismissed the suit, and the parties continued their negotiations.  In March 2019, Plaintiff refiled its suit.  Although Plaintiff, through Charlton, had regular communication with Defendant and knew he lived in South Carolina, Plaintiff did not make any attempt to serve Defendant in South Carolina.

Although Plaintiff's agent knew Defendant's home address and email, Plaintiff chose to have a process server give the Complaint in an envelope to a person other than Defendant and did so in Washington, D.C.  That person did not know what was in the envelope and never looked at what was inside the envelope.  That person never transmitted the envelope to Defendant and does not know what happened to it.  Defendant, who frequently travels out of the country for business, was not aware that the lawsuit had been refiled and believed that negotiations to resolve the dispute were ongoing.  Defendant recently became aware of the lawsuit and Plaintiff's Motion for Default Judgment.

ARGUMENT

## I.      Default Judgments Are Not Favored.

The facts indicate that despite the clear ability of Plaintiff to notify Defendant of the renewed lawsuit, Plaintiff took no proper action to do so.  Accordingly, this Court should deny its Motion for Default Judgment.  "Default judgments are not favored by modern courts" as "strong policies favor resolution of disputes on their merits."  *Jackson v. Beech*, 636 F.2d 831, 835-36 (D.C. Cir. 1980); *see also Int'l Painters and Allied Union and Indus. Pension Fund v. H.W. Ellis Painting Co., Inc.*, 288 F.Supp.2d 22, 25 (D. D.C. 2003) ("Default judgments are generally disfavored by courts, because entering and enforcing judgments as a penalty for delays in filing is often contrary to the fair administration of justice.").  As such, a "lower standard" is applied by a court in evaluating a motion to set aside an entry of default as opposed to a motion

to set aside a default judgment.  *Essroc Cement Corp. v. CTI/D.C., Inc.*, 263 F.R.D. 17, 20 (D.

D.C. 2009).

Under Rule 55(c) of the Federal Rules of Civil Procedure, "[t]he court may set aside an

entry of default for good cause."  Fed. R. Civ. Pro. 55(c).  In determining whether "good cause"

has been shown, courts balance three factors: whether "1) the default was willful, 2) a set-aside

would prejudice plaintiff, and 3) the alleged defense was meritorious...."  *Keegel v. Key West &*

*Caribbean Trading Co.,* 627 F.2d 372, 373 (D.C. Cir. 1980).  When considering whether to enter

a default judgment, "all doubts are resolved in favor of the party seeking relief."  *Essroc Cement*,

263 F.R.D. at 20.

## II.     Consideration Of These Three Factors Support Denial Of Plaintiff Woodland Drive's Motion.

Defendant's default here was not willful.  First, Defendant was not properly served at his

"dwelling or usual place of abode."  Service pursuant to Rule 4(e)(2)(B) of the Federal Rules of

Civil Procedure is improper unless a copy of the summons and the complaint are left with a

person of suitable age "at the individual's dwelling or usual place of abode."  Fed. R. Civ. Pro.

4(e)(2)(B).  As this Court has stated, service at a location other than at Defendant's place of

abode is insufficient.  In *Tafler v. D.C.*, the Court rejected the plaintiff's attempt to serve the

defendant by serving his father at a location where the defendant did not reside.  There, as here,

the defendant did not reside with the person served nor even in the same state.  2006 WL

3254491, at *4 (D. D.C. 2006).  Therefore, Plaintiff failed properly to serve Defendant.

Second, Plaintiff will not be prejudiced by permitting this lawsuit to be properly

adjudicated.  Plaintiff initially filed this lawsuit in 2018, dismissed it a few weeks later, and then

waited almost nine months to renew it.  This voluntary delay by Plaintiff suggests that it has no

deadline pressure to resolve this suit.  Moreover, if Plaintiff wanted to proceed expeditiously for its day in Court, it could have made proper efforts to notify and to serve Defendant.

Finally, Defendant has meritorious defenses to the allegations made by Plaintiff.  The existence of meritorious defenses is a key factor for the Court to consider in deciding whether to vacate a clerk's default.  *See Keegel*, 627 F.2d at 373.  Defendant would be prejudiced by not having an opportunity to present the defenses available to him.  Here, Plaintiff's allegations are both overly broad yet materially incomplete.  An analysis of the facts underlying the transactions of which Plaintiff complains would reveal that Plaintiff is likely not entitled to the relief it seeks.  Although Defendant's defenses will best be developed during discovery, some are clear from a review of the allegations of Plaintiff's Complaint.  For instance, under each of the causes of action, Plaintiff claims damages in connection with a four million dollar transfer that was sent to Defendant in March of 2015.  However, as Plaintiff alleges it did not transfer the fund but rather a "related party" did.  *See* Compl. ¶¶ 6, 34.  Thus, it is not clear Plaintiff has standing.

Plaintiff was not even in existence in March 2015.  Records maintained by the State of Delaware, Division of Corporations, show that Plaintiff was first incorporated on August 27, 2015, several months after the alleged investment occurred.  The distinction between Plaintiff and the unidentified source of the alleged investment sent to Defendant also creates several obstacles to the enforceability of the document attached to the Complaint as Exhibit 1, purporting to be an agreement for a security interest in certain real estate within the District.  This document identifies the alleged investment as occurring in March 2015 as consideration for the security agreement, but the alleged investment did not involve Plaintiff and Exhibit 1 was not allegedly executed until May 2016.  *See* Compl. ¶ 9.  Therefore, Exhibit 1 would not be enforceable as it relies on past consideration, which both Delaware (the state identified in Exhibit

1's choice of law provision) and the District recognize as insufficient.  *See Continental Ins. Co.
v. Rutledge & Co., Inc.,* 750 A.2d 1219, 1232 (Del.Ch. 2000) ("Past consideration, as opposed to
true consideration, however, cannot form the basis for a binding contract.  A party cannot rely on
a pre-existing duty as his legal detriment in an attempt to formulate a contract."); *see also
Murray v. Lichtman*, 339 F.2d 749, 752 (D.C. Cir. 1964) ("It is, of course, well settled that past
consideration is no consideration.") (citations omitted).

Additionally, and without waiving any other applicable defenses, Plaintiff's claims
appear to be barred by the statute of limitations.  The basis of Plaintiff's Complaint arises from
actions that allegedly occurred in 2015.  Yet, the statute of limitations for contract claims under
both Delaware and D.C. law is three years.  *See* 10 Del.C. § 8106(a); D.C. Code § 12-301(7).
Likewise, the statute of limitations for fraud and other torts under D.C. law is also three years.
*See* D.C. Code § 12-301(8).  Since Plaintiff filed this action on March 18, 2019, its claims could
be barred, in their entirety, by the applicable statute of limitations.  Accordingly, Defendant
should be permitted to present his meritorious defenses.

## CONCLUSION

WHEREFORE, Defendant respectfully requests that this Court deny Plaintiff's Motion.

Respectfully Submitted,

*/s/ Russell D. Duncan*
Russell D. Duncan (DC Bar No. 366888)
Alexander R. Green (DC Bar No. 1017781)
Clark Hill PLC
1001 Pennsylvania Avenue, N.W.
Suite 1300 South
Washington, DC 20004
Telephone:   (202) 640-6657
Facsimile:   (202) 552-2377
Email:       rduncan@clarkhill.com
             agreen@clarkhill.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of September, 2019, the foregoing document was filed via the CM/ECF system, which will send out a notification of filing thereof to all counsel of record in this matter.

*/s/ Russell D. Duncan*
Russell D. Duncan
