UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

Woodland Drive LLC

Plaintiff

vs.                                    Case No.: 1:19-cv-00750-RJL

James Courtovich

Defendant

## AFFIDAVIT OF SERVICE

I, David S. Felter, a Private Process Server, being duly sworn, depose and say:

That I am over the age of eighteen years and not a party to or otherwise interested in this action.

That I have been duly authorized to make service of the Summons and Complaint with Exhibit 1 in the above entitled case.

That on 04/15/2019 at 8:43 AM, I served James Courtovich with the Summons and Complaint with Exhibit 1 at 2900 Woodland Drive, NW, Washington, DC 20008, by serving Jeff Zeleny, housemate of James Courtovich, a person of suitable age and discretion, who stated that he/she resides therein with James Courtovich.

Jeff Zeleny is described herein as:

Gender: Male   Race/Skin: White   Age: 41   Weight: 170   Height: 5'11"   Hair: Black   Glasses: No

I declare under penalty of perjury that this information is true and correct.

April 18, 2019
_____
Executed On

_____
David S. Felter

Client Ref Number:6015108.00001
Job #: 1559617

Capitol Process Services, Inc. | 1827 18th Street, NW, Washington, DC 20009 | (202) 667-0050



District of Columbia: Property Detail

Page 1 of 2

 Office of Tax and Revenue

## Property Detail

**Address:** 2900 WOODLAND DR NW
**SSL:** 2140 0047

### Record Details

| | | | |
|---|---|---|---|
| Neighborhood: | MASS. AVE. HEIGHTS | Sub-Neighborhood: | |
| Use Code: | 12 - Residential-Detached-Single-Fa | Class 3 Exception: | No |
| Tax Type: | TX - Taxable | Tax Class: | 001 - Residential |
| Homestead Status: | ** Not receiving the Homestead Deduction | | |
| Assessor: | HAROLD BROWN | | |
| Gross Building Area: | | Ward: | 3 |
| Land Area: | 15,346 | Triennial Group: | 1 |

### Owner and Sales Information

| | |
|---|---|
| Owner Name(s): | JAMES C COURTOVICH |
| Care Of: | |
| Mailing Address: | 2900 WOODLAND DR NW, WASHINGTON DC 20008-3541 |
| Sale Price: | $3,835,000 |
| Recordation Date: | 10/02/2012 |
| Instrument No.: | 105995 |
| Sales Code: | MARKET |
| Sales Type: | I - IMPROVED |

### Tax Year 2020 Preliminary Assessment Roll

| | Current Value (2019) | Proposed New Value (2020) |
|---|---|---|
| Land: | $1,784,030 | $1,820,910 |
| Improvements: | $2,682,060 | $2,644,270 |
| Total Value: | $4,466,090 | $4,465,180 |
| Taxable Assessment: * | $4,466,090 | $4,465,180 |

* Taxable Assessment after Tax Assessment Credit and after $74,850 Homestead Credit, if applicable. (Click here for more information).

** If you believe you should be receiving tax relief through the Homestead deduction program and if you are domiciled in the District and this property is your principal place of residence, you can access the link below, complete the form, and return it per the instructions. For additional information regarding the Homestead program, call (202)727-4TAX. Click here to download the Homestead Deduction and Senior Citizen Tax Relief application *

If the real property does not appear on the map below, please either search the map manually or email questions or feedback to maps.title@dc.gov. If emailing, please provide the Square Suffix Lot and property address (if applicable).


EXHIBIT
2

# Jeff Zeleny, James Courtovich

Pablo Martinez Monsivais, AP file photo   Sep 25, 2019



Jeff Zeleny (left), CNN's senior Washington correspondent, and James Courtovich arrive for a state dinner for Prime Minister of Singapore Lee Hsien Loong, in 2016 at the White House.



EXHIBIT

3





James Courtovich · 1st

Managing Partner at Sphere Consulting LLC

Sphere Consulting LLC · UNH & PSC

Washington D.C. Metro Area · 500+ connections

Message    More...

 What is James Courtovich's top skill?    ×

Help us identify relevant opportunities and content for your connections.

Crisis Communications    Event Planning

Public Policy    Public Relations

Your response is anonymous and will not be directly shared with your connections or other LinkedIn members. Learn more

None of the above

Highlights

        



EXHIBIT

4

## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

Woodland Drive LLC

Plaintiff

*vs.*

Case No.: 1:19-cv-00750-RJL

James Courtovich

Defendant

### AFFIDAVIT

I, David S. Felter, being duly sworn, depose and say:

That I am a licensed Private Investigator in the District of Columbia.

That I am over the age of eighteen years and not a party to or otherwise interested in this matter.

That on the occasion I perfected service on the defendant, James Courtovich, on April 15, 2019 at 8:43 AM, Jeff Zeleny, housemate of James Courtovich, stated to me that he and James Courtovich lived together within the home. In addition, he stated that he would give the papers to his partner.

That Jeff Zeleny, born June 10, 1973, has a utility at 2900 Woodland Drive, NW, Washington, DC 20008 in his name, a Jeep Cherokee automobile registered in his name at this address and has a voter registration at this address, having last voted in November, 2018.

That prior to my service to James Courtovich via Jeff Zeleny, I spoke to a personal assistant of James Courtovich at the home, who stated that James Courtovich was not at home at the time but that he, indeed, lived within.

That James Collin Courtovich owns the property located at 2900 Woodland Drive, NW, Washington, DC 20008 and has a utility in his name there effective of September 17, 2012.

That James Courtovich registered a 2016 Porsche Cayenne to 2900 Woodland Drive, NW, Washington, DC 20008 on November 16, 2017.

That my colleague, Louis Gerrick, when attempting to serve James Courtovich on May 28, 2019 at 8:14 AM at 2900 Woodland Drive, NW, Washington, DC 20008 in an unrelated matter, spoke to a man who answered the front door of the house. The man stated to Mr. Gerrick that James Courtovich did in fact live at the house, but that he was housesitting for James Courtovich while he was out of town until at least May 29, 2019.

I declare under penalty of perjury that this information is true.

_October 3 2019_
Executed On

David S. Felter

Client Ref Number:6015108.00001
Job #: 1568712



EXHIBIT
5

Capitol Process Services, Inc. | 1827 18th Street, NW, Washington, DC 20009 | (202) 667



Le Poisson Bleu

COOKING CONVENIENTLY AND WITH PURPOSE #LPBCOOKS

Essential Tools for the Kitchen    London ⌘    LPB Test Kitchen    The Art of Entertaining    The Hill House    The Houseterns
Traveling and eating around the 🌐    Le Poisson Bleu &



Snow Brunch: Chili for 40





Intel

Facebook

Communications Professional and
Amateur Cook...trying to bring the
two together again.
View all posts by Jim Courtovich

PUBLISHED BY
Jim Courtovich



# Cooking Conveniently and with Purpose #LPBcooks

# Le Poisson Bleu 

## Now Over 150 Uniques Recipes



**What's this blog all about?**

Life circles around many things but for me it is a meal…for fun, work, family or a mixture of all, nothing brings people together more than a comfortable and enjoyable setting and a meal that everyone will enjoy and remember for some time.   I had my first series of dinner parties when I was in college in New Hampshire, we were far north in ski country, Plymouth, NH, and would gather every Thursday night. When I jumped into politics soon thereafter I kept the tradition of dinners and barbecues as it was a great way to assembly friends and colleagues.   You could have a lot of fun and get a lot of work done too.   The went on when I moved to Washington, New York, Boston and then back to Washington.


EXHIBIT
7



### Where at?

Le Poisson Bleu resides in Washington, D.C. and part-time on a tiny island just outside of Charleston, S.C., named Sullivan's Island for weekends. Washington is a big small town and everything blends together from work to recreation. It's a town that is a bit self loathing because in one resect people like to bemoan the disfunction of the town. For me, I think it's a great place filled with smart and interesting people trying to get things done. The downside of that is that there are two to three sides to every issues and everyone interprets matters their own way. So there comes the conflict that leads to the blocking and tackle town that unfolds in the press every day. But over a meal people can put the difference aside and sit back and enjoy themselves, relax and talk over an abundance of food and drink. That's where I like to come in.

On Sullivan's Island, the inner southerner comes out, y'all. As a Yankee in the deep south, I have tried to take on a Low Country spin on many of the dishes from up north. I have been influenced by my neighbor and true Southern Bell, **Ms. Jan Crawford (https://en.wikipedia.org/wiki/Jan_Crawford)**. Now she is a true southern cook who can whip out some of the best pies and just about anything else in a country second.

**Cook, Andrew N.**

| | |
|---|---|
| **From:** | Cook, Andrew N. |
| **Sent:** | Monday, April 29, 2019 4:37 PM |
| **To:** | Russell D. Duncan |
| **Subject:** | FW: Woodland Drive LLC v James Courtovich; Civil Action No. 19-cv-00750-RJL |
| **Attachments:** | 20190326104433152.PDF |

Russell, copy of the Complaint attached.  Tks, Andy



**Andrew N. Cook**
Partner
K&L Gates LLP
1601 K Street, N.W.
Washington, D.C.  20006
Phone: 202 778-9106
Fax: 202 778-9100
Andrew.Cook@KLGates.com



1

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT
for the

District of Columbia

| | | |
|---|---|---|
| Woodland Drive LLC<br>1209 Orange Street<br>Wilmington, DE 19801 | ) ) ) ) ) | |
| *Plaintiff(s)* | ) | |
| v. | ) ) | Civil Action No.   19-cv-00750-RJL |
| James Courtovich<br>2900 Woodland Drive, N.W.<br>Washington, DC 20008 | ) ) ) ) ) | |
| *Defendant(s)* | ) | |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  James Courtovich, 2900 Woodland Drive, N.W., Wash., DC 20008

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   Andrew N. Cook, Esq., K&L Gates LLP, 1601 K St., N.W., Washington, DC 20006.

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Date:   03/19/2019

CLERK OF COURT

/s/ Elizabeth A. Fernandez

*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No. _____

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____.

□ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

□ I left the summons at the individual's residence or usual place of abode with *(name)*
_____ , a person of suitable age and discretion who resides there,
on *(date)* _____ , and mailed a copy to the individual's last known address; or

□ I served the summons on *(name of individual)* _____ , who is
designated by law to accept service of process on behalf of *(name of organization)* _____
_____ on *(date)* _____ ; or

□ I returned the summons unexecuted because _____ ; or

□ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00

I declare under penalty of perjury that this information is true.


Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WOODLAND DRIVE LLC<br>1209 Orange Street<br>Wilmington, DE 19801<br><br>Plaintiff,<br><br>v.<br><br>JAMES COURTOVICH<br>2900 Woodland Drive, N.W.<br>Washington, DC 20008<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Civil Action No.<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

Woodland Drive LLC ("Woodland " and/or "Plaintiff"), by and through its undersigned

counsel K&L Gates, LLP, hereby files this Complaint against Defendant James Courtovich

("Courtovich" and/or "Defendant") and states in support thereof as follows:

## NATURE OF THE CASE

1.    This case involves the loaning of funds, $4,000,000.00, for the purpose of

purchasing a townhouse in Washington, DC and to set up a company to be owned by the parties

that would operate primarily from the townhouse.  In late 2014, Defendant made a proposal to

Plaintiff whereby Plaintiff would provide seed money for a business, S.G.R. LLC, Government

Relations and Lobbying ("SGR"), to be jointly owned by the Parties, with approximately half of

the seed money being used to purchase a property to be used by the business and the other half to

be used in the business.  Pursuant to a Security Agreement executed in May of 2016 (Exhibit 1),

Plaintiff through a related entity provided the funds to Defendant as seed money for SGR and for

the purchase of real property, 625 Massachusetts Avenue, N.E., Washington, DC (the "Real Estate") in Defendant's name. Plaintiff through a related entity provided the funds to Defendant at his request into his personal bank account. The Agreement provided that once purchased, Defendant would facilitate Plaintiff obtaining a security interest in the Real Estate for the amount loaned on the property to secure repayment to Plaintiff. Defendant agreed to keep the property free and clear of all claims, liens or encumbrances but for Plaintiff's security interest. Defendant, however, instead of keeping the property free and clear of encumbrances, obtained for himself a bank loan on the Real Estate in the amount of approximately 1.3 million dollars, thereby violating the terms of the Security Agreement. The balance of the funds received by Defendant were to be used for SGR. Defendant formed SGR but has failed and refused to provide Plaintiff with any interest in the company and has failed and refused to provide Plaintiff with a proper accounting as to how the funds have been used and whether the funds were used as the Parties intended and agreed, and he has refused to make repayments on the loan (as well as not paying interest due on the loan).

## PARTIES

2.    Plaintiff Woodland is a Delaware corporation existing under the laws of Delaware with its principle place of business in Wilmington, Delaware.

3.    Defendant Courtovich is a District of Columbia resident who, on information and belief, lives at 2900 Woodland Drive, N.W., Washington, DC.

## JURISDICTION AND VENUE

4.    This Court has jurisdiction pursuant to 28 U.S.C. § 1332, as this is a matter between citizens of different states, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5.      Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) because Defendant resides in this district.

## FACTUAL BACKGROUND

6.      In late 2014 and early 2015, Defendant proposed that Plaintiff and Sphere Consulting LLC, a company in which Defendant has an interest, establish a limited liability company in which they would both have an interest.  The purpose of SGR would be to engage in government relations and lobbying in Washington, DC.  To get that entity off the ground, Woodland, through a related entity, agreed to loan SGR $4,000,000 (the "Loan").  The purpose of the Loan was twofold.  First, approximately half of the loaned amount was to be used to purchase the Real Estate for use by SGR for its government relations and lobbying activities.  The Defendant was to purchase the Real Estate individually and then give Woodland a security interest in the property to the extent of monies loaned.  The balance of the Loan was to be used for getting SGR up and running.  The Defendant also agreed to give the Plaintiff an interest in SGR, to repay the loan (with interest), and to provide regular financial disclosures to the Plaintiff.

7.      Defendant's proposal was agreed to and as a result, in March of 2015, $4,000,000 was wire transferred directly to Defendant.  Defendant received the funds and has failed and refused to provide Plaintiff with a proper accounting or any supporting documentation on how the money was used or expended.

8.      Defendant failed and refused to give Plaintiff an interest in SGR.  He has failed and refused to make any repayments on the Loan.  Further, he failed and refused to provide Plaintiff with any proper financial information, including proper financial statements, regarding SGR.

9.     Pursuant to the Security Agreement executed in May of 2016 (Exhibit 1), Defendant agreed to grant Plaintiff a security interest in the Real Estate. He agreed to cooperate with Plaintiff to establish and maintain a valid and properly perfected security interest in the Real Estate.

10.     Pursuant to that same Security Agreement, the Defendant agreed to keep the Real Estate free and clear of all claims, liens or encumbrances other than the security interest provided to Plaintiff. Defendant also agreed to repay the full amount of the Loan (with interest).

11.     On or about September 4, 2015, in contravention of the Security Agreement and unbeknownst to Plaintiff, Defendant procured a deed of trust on the Real Estate in the amount of 1.32 million dollars for his own benefit and to the detriment of Plaintiff.

12.     Defendant did not disclose to Plaintiff that he had mortgaged the Real Estate prior to obtaining the same.

## COUNT I
## (FRAUD)

13.     The foregoing paragraphs are incorporated by reference as if fully set forth herein.

14.     Defendant falsely represented that he would procure the Real Estate and keep it free and clear of encumbrances when he knew, with intent to deceive, he was going to encumber the Real Estate for his own benefit and to the detriment of Plaintiff. Plaintiff relied to its detriment upon Defendant's representation and has been injured thereby.

15.     While Plaintiff's total loss as a result of the Defendant's fraudulent representations is not yet fully known, Plaintiff believes that it has been damaged to the extent of at least 1.32 million dollars when Defendant procured a deed of trust on the Real Estate and has

been otherwise damaged due to Defendant's failure and refusal to provide an interest in SGR and to account for and repay any of the amounts loaned to Defendant (with Interest), after repeated demand, without justification or excuse.  Plaintiff does not know what Defendant has done with the money wire transferred to Defendant.

WHEREFORE, Woodland Drive LLC respectfully requests that this Court enter judgment in its favor as follows:

(i)     For a temporary restraining order, and subsequent permanent order, enjoining James Courtovich from using, transferring, spending, dissipating, and/or destroying the fraudulently-acquired Woodland funds;

(ii)    For damages, including compensatory and punitive damages, in an amount to be proven at trial or otherwise after entry of judgment in Woodland's favor against Defendant in the amount of at least $4,000,000;

(iii)   For pre and post-judgment interest on Plaintiff's damages and attorneys fees and costs; and

(iv)    For other such relief as this Court deems just and proper.

## COUNT II
### (BREACH OF CONTRACT - REAL ESTATE)

16.    The foregoing paragraphs are incorporated by reference as if fully set forth herein.

17.    Defendant signed a Security Agreement agreeing to give Woodland a security interest in the Real Estate and, but for that security interest, not to encumber the Real Estate.

18.    In direct breach of the Security Agreement, Defendant procured a 1.32 million dollar loan against the Real Estate in his own name.  Because the Real Estate was purchased for approximately 1.6 million dollars, Defendant deprived Plaintiff of virtually any

ability to obtain the security interest in the Real Estate that was promised by Defendant (noting that the Defendant has refused to cooperate with Plaintiff to establish and maintain a valid and properly perfected security interest in the Real Estate).

19.    Defendant's procuring a mortgage loan for himself in direct contravention of the agreement between the parties is a material breach of contract entitling Plaintiff to damages in the amount of at least 1.32 million dollars.

20.    Defendant has failed and refused to properly account for the $4,000,000 Plaintiff wire transferred to Defendant and has failed and refused to properly account for or provide evidence of how the balance of the Loan has been expended or use.

WHEREFORE, Plaintiff Woodland Drive LLC requests that this Court enter judgment in its favor against Defendant James Courtovich as follows:

(i)    In the amount of at least $4,000,000 for breach of contract;

(ii)    For pre and post-judgment interest on Plaintiff's damages and attorneys fees and costs; and

(iii)    For other such relief as this Court deems just and proper.

## COUNT III
### (BREACH OF CONTRACT - FAILURE TO PROVIDE INTEREST IN SGR)

21.    The foregoing paragraphs are incorporated by reference as if fully set forth herein.

22.    Defendant agreed to give Plaintiff a security interest in SGR in return for the investment seed money Plaintiff provided Defendant to establish SGR.

23.    In direct breach of that agreement, Defendant has failed and refused to provide Plaintiff the intended interest in SGR.

- 6 -

24.     Defendant's breach of his agreement with Plaintiff has injured Plaintiff entitling Plaintiff to the damages requested herein.

WHEREFORE, Plaintiff Woodland Drive LLC requests that this Court enter judgment in its favor against Defendant James Courtovich as follows:

(i)     In the amount of at least $4,000,000 for breach of contract;

(ii)    For pre and post-judgment interest on Plaintiff's damages and attorneys fees and costs; and

(iii)   For other such relief as this Court deems just and proper.

## COUNT IV
### (WRONGFUL CONVERSION)

The foregoing paragraphs are incorporated by reference as if fully set forth herein.

25.     Defendant knowingly obtained funds from the Real Estate he agreed to keep free of encumbrances.  Defendant knowingly obtained funds from Plaintiff he agreed to use for SGR and instead used said funds for other purposes, all without the consent or knowledge of Plaintiff.

26.     Defendant continually concealed his actions and attempted to keep knowledge of said mortgage and actions from Plaintiff for purposes of concealing his fraudulent conduct.

27.     Defendant did not have the authority or permission to receive, divert and exercise dominion and control over such security and funds from Plaintiff.

28.     Defendant's actions and conduct in fraudulently acquiring funds through the mortgage were motivated by actual malice.

- 7 -

303144251 v1

29.    While Woodland's total loss as a result of the Defendant's fraudulent and tortious conduct is not yet fully known, Plaintiff believes it has been injured to at least $4,000,000.

WHEREFORE, Plaintiff Woodland Drive LLC requests that this Court enter judgment in favor of Plaintiff against Defendant James Courtovich as follows:

      (i)      In the amount of at least $4,000,000 for breach of contract;

      (ii)      For pre and post-judgment interest on Plaintiff's damages and attorneys fees and costs; and

      (iii)      For other such relief as this Court deems just and proper.

## COUNT V

### (UNJUST ENRICHMENT)

30.    The foregoing paragraphs are incorporated by reference as if fully set forth herein.

31.    Defendant Courtovich falsely represented that he would procure the Real Estate and keep it free and clear of encumbrances when he knew, with intent to deceive, he was going to encumber the Real Estate. Defendant has made use of the monies loaned for the benefit of SGR apparently for his own purposes without justification or excuse, and he has refused to provide Plaintiff with anything that he agreed to provide in exchange for the funds. Defendant has intentionally concealed his use of the funds from Plaintiff. Plaintiff relied to its detriment upon Defendant's representation and has been injured thereby.

32.    While Plaintiff's total loss as a result of the Defendant's fraudulent representations and actions is not yet fully known, Plaintiff believes that it has been damaged to the extent of at least 1.32 million dollars.

WHEREFORE, Woodland Drive LLC respectfully requests that this Court enter judgment in its favor as follows:

(i)      For a temporary restraining order, and subsequent permanent order, enjoining Defendant from using, transferring, spending, dissipating, and/or destroying the fraudulently-acquired Woodland funds;

(ii)  For damages, including compensatory and punitive damages, in an amount to be proven at trial or otherwise after entry of judgment in Woodland's favor against Defendant in the amount of at least $4,000,000;

(iii)  For pre and post-judgment interest on Woodland's damages and attorneys fees and costs; and

(iv)  For other such relief as this Court deems just and proper.

## COUNT VI

## (ACTION FOR ACCOUNTING)

33.    The foregoing paragraphs are incorporated by reference as if fully set forth herein.

34.    Plaintiff through a related entity wire transferred $4,000,000 to Defendant for the agreed upon purposes as referenced herein. Plaintiff has a common law right to obtain an equitable accounting from Defendant for the funds transferred as a Loan. Defendant is in possession of all information necessary to account for and determine the use of the Loan amount wire transferred to Defendant by Plaintiff. A fiduciary relationship exists between Plaintiff and Defendant.

35.    Defendant's obligations to account for the funds wire transferred to Defendant are based upon the facts and records which are known and kept exclusively by Defendant (information to which Plaintiff does not have access), and the duty to return such funds to Plaintiff rests upon Defendant's fiduciary obligation to Plaintiff.

36.    Defendant has failed and refused to provide the required proper accounting information to Plaintiff in breach of Defendant's fiduciary duty to Plaintiff.

WHEREFORE, Plaintiff Woodland Drive LLC respectfully requests that this Court enter an Order directing that Defendant Courtovich immediately and promptly provide a true and full accounting to Plaintiff as to how any or all of the $4,000,000.00 has been expended with a full disclosure of all banking and related information regarding the loan amount and that this Court enter such other and further relief as this Court deems just and proper.

K&L GATES LLP


By _____/s/ Andrew N. Cook_____
          Andrew N. Cook (Bar No. 416199)
          1601 K Street, N.W.
          Washington, DC 20006
          Telephone:    (202) 778-9106
          Facsimile:    (202) 778-9100
          Andrew.Cook@KLGates.com
          *Counsel for Plaintiff*

# SECURITY AGREEMENT

**DATED:** _____ ____, 2016

**EFFECTIVE DATE:** March 9, 2015

**SECURED PARTY:** Woodland Drive LLC ("**Investor**")

**GRANTOR:** James Courtovich ("**Courtovich**")

## BACKGROUND:

Investor has invested Four Million Dollars ($4,000,000) ("**Loan**") for the benefit of S.G.R. LLC, Government Relations and Lobbying, a Delaware limited liability company (the "**Company**"). Investor has agreed that approximately Two Million Dollars ($2,000,000) of the Loan ("**Real Estate Loan**") shall be used to purchase real estate in Washington, D.C. (the "**Real Estate**") in the name of Courtovich as evidenced by the Operating Agreement of the Company, effective as of January 1, 2015 (the "**Operating Agreement**")

Courtovich agrees to grant Investor a security interest in the Real Estate to secure the performance and observation by Company of all of the covenants, obligations, representations and warranties related to the Real Estate Loan, evidenced by the Operating Agreement and by this Security Agreement (collectively referred to herein as the "**Obligations**").

## AGREEMENTS:

In consideration of the premises and mutual covenants and promises contained herein, the parties named above agree as follows:

1. _Application of UCC._ "**UCC**" means the Uniform Commercial Code as the same may from time to time be in effect in the District of Columbia; _provided, however,_ in the event that, by reason of mandatory provisions of law, any or all of the attachment, perfection or priority of Investor's security interest in any "**Collateral**" (as defined in Section 2 below) is governed by the Uniform Commercial Code as in effect in a jurisdiction other than the District of Columbia, the term "**UCC**" shall mean the Uniform Commercial Code as in effect at such time in such other jurisdiction for purposes of the provisions hereof. Unless otherwise defined in this Security Agreement, all terms defined in the Uniform Commercial Code and used herein shall have the same definitions herein as specified therein whether or not such term is capitalized. Filing to take place on August 1, 2016.

2. _Grant of Security Interest._ In order to secure payment and performance of the Obligations, Courtovich hereby grants to Investor a security interest in the Real Estate (referred to herein as the "**Collateral**").

NAI-783212655v3

**EXHIBIT**

1

3.  <u>Courtovich's Representations, Warranties and Covenants.</u> Courtovich represents, warrants and covenants that:

   a.  Courtovich has full power and authority to execute this Security Agreement and to subject the Collateral to the security interest created hereby;

   b.  This Security Agreement and the Operating Agreement have been duly authorized by all necessary action;

   c.  Courtovich authorizes Investor to file at any time, and from time to time, financing statements and amendments thereto or other similar instruments, and perform such acts as Investor reasonably may request to establish and maintain a valid and properly perfected security interest in the Collateral;

   d.  Courtovich will keep accurate and complete records of the Collateral at all times and permit Investor to inspect the records and the Collateral at all reasonable times. Upon request of Investor, Courtovich will furnish such reports and statements as Investor reasonably may request with respect to the Collateral; and

4.  <u>Other Covenants of Courtovich.</u> So long as any of the Obligations, including under the Operating Agreement or this Security Agreement or any part thereof, remains unpaid or unperformed, Courtovich further covenants and agrees that:

   a.  Courtovich shall not sell or otherwise transfer or dispose of the Collateral without prior notice to and consent of the Investor;

   b.  Courtovich shall promptly pay all taxes and other governmental charges' levied or assessed upon or against any Collateral;

   c.  Courtovich shall keep the Collateral free and clear from all claims, liens or encumbrances, except for the security interest granted hereby or otherwise consented to by Investor; and

5.  <u>Events of Default.</u> Courtovich shall be in default under this Security Agreement upon the happening of any of the following events (each an "**Event of Default**"):

   a.  Any representation or warranty made by Courtovich in this Security Agreement proves to be materially false or misleading;

   b.  Courtovich materially breaches any of his other covenants, obligations or duties under this Security Agreement and such default remains uncured after the expiration of any cure period, if applicable, following written notice of such default if required;

    c. Courtovich files a petition in bankruptcy, insolvency or receivership; or if such petition is filed against Courtovich and is not dismissed within thirty (30) days of filing; or if Courtovich makes an assignment for the benefit of creditors; or

    d. A garnishment, summons or a writ of attachment is issued against or served upon Investor regarding the attachment of any property of Courtovich or any indebtedness owing to Courtovich and is not dismissed within thirty (30) days of filing or otherwise consented to by Investor.

6.   Remedies Upon Default. Upon the occurrence of an Event of Default as set forth in the preceding paragraph and such Event of Default remains uncured after the applicable cure period following written notice of default, Investor may exercise any and all of the following remedies provided hereunder or under applicable law. No exercise of any one or more of such remedies shall preclude Investor from exercising any other such remedy at the same time or any other time. Investor may:

    a. Declare the balance of Real Estate Loan to be paid under the Operating Agreement, to be due and payable immediately; and

    b. Exercise any and all of the remedies of a Investor under the Uniform Commercial Code with respect to the Collateral, including the right to offer and sell the Collateral privately to purchasers. If notice to Courtovich is required by law in a particular instance, such notice shall be deemed to be commercially reasonable if given at least ten (10) calendar days prior to the date of the intended disposition or other action. Courtovich will pay any deficiency that may remain after exercise of such rights. All of Investor's rights hereunder are cumulative and no waiver of any default shall affect any subsequent default.

7.   No Waiver. Waiver by Investor of any default of Courtovich hereunder shall not be a waiver of any default or of the same default on a later occasion. No delay or failure by Investor to exercise any right or remedy shall be a waiver of such right or remedy. No single or partial exercise by Investor of any right or remedy shall preclude other or further exercise of such right or remedy at any other time.

8.   Notices.  All notices to be given to Courtovich shall be deemed sufficiently given if delivered by courier, or mailed, emailed or faxed with receipt acknowledged, to Courtovich at the most recent address shown on Investor's records.

10.   Survival. All representations, warranties and covenants contained in this Security Agreement shall survive the execution, delivery and performance of this Security Agreement and the creation and payment of the Obligations.

11.   Modification. No waiver, modification, amendment or termination of this Security Agreement or any provision hereof shall be effective unless contained in a writing signed by the party to be bound thereby.

12.  <u>Successors and Assigns</u>. This Security Agreement shall be binding upon and inure to the benefit of Courtovich and Investor and their respective heirs, representatives, successors and assigns.

13.  <u>Applicable Law</u>. This Security Agreement and all rights and obligations hereunder shall be governed by and interpreted under the laws of the State of Delaware, without application of any choice of law considerations.

14.  <u>Entire Security Agreement.</u> This Security Agreement represents the only agreement among the parties concerning the subject matter hereof and supersedes all prior agreements, whether written or oral, relating thereto. Copies of this Security Agreement with signatures transmitted electronically (e.g., by facsimile or pdf) shall be deemed to be original signed versions of this Security Agreement.

[SIGNATURE PAGE FOLLOWS]

IN WITNESS WHEREOF, the parties have executed this Security Agreement as of the Effective Date.

**GRANTOR**

JAMES COURTOVICH

By: _____

**SECURED PARTY**

WOODLAND DRIVE LLC

By: _____

Name: Simon Charlton

Title: Manager

NAI-783212655v3

5

IN WITNESS WHEREOF, the parties have executed this Security Agreement as of the day and year first written above.

GRANTOR

JAMES COURTOVICH

By: _____


SECURED PARTY

WOODLAND DRIVE LLC

By: _____

Name: _____

Title: _____


WAI-78·212n55·2                                    5