**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **WOODLAND DRIVE LLC**, <br><br> Plaintiff, <br><br> v. <br><br> **JAMES COURTOVICH**, <br><br> Defendant. | Case No.:  1:19-cv-00750-CJN |

**MEMORANDUM OF LAW IN SUPPORT OF
<u>COURTOVICH'S MOTION TO DISMISS</u>**

Respectfully Submitted,
**JAMES COURTOVICH**,

*By Counsel*

Russell D. Duncan (D.C. Bar No. 366888)
Alexander R. Green (D.C. Bar No. 1017781)
CLARK HILL PLC
1001 Pennsylvania Avenue, N.W.
Suite 1300 South
Washington, DC 20004
Telephone:   (202) 640-6657
Facsimile:   (202) 552-2377
Email:       rduncan@clarkhill.com
             agreen@clarkhill.com

*Counsel for Defendant
James Courtovich*

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................... 1

SUMMARY OF PLAINTIFF'S ALLEGATIONS .......................................................................... 2

STANDARD OF REVIEW .......................................................................................................... 3

ARGUMENT ............................................................................................................................ 5

I.   Plaintiff Lacks Standing to Maintain Counts I (Fraud), III (Breach of Contract), IV (Wrongful Conversion), V (Unjust Enrichment), and VI (Action for Accounting) Because the Alleged Misconduct Occurred Prior to August 27, 2015, When Plaintiff Was Formed. ................................................................................................................ 5

II.  Count II (Breach of Contract) Should Be Dismissed Because the Security Agreement Is Unenforceable. ............................................................................................................ 9

III. Plaintiff's Claims Are Time-Barred. .................................................................... 11

CONCLUSION ....................................................................................................................... 13

CERTIFICATE OF SERVICE ................................................................................................... 14

i

## TABLE OF AUTHORITIES

**Cases**

*Abu Ali v. Gonzales*, 387 F. Supp. 2d 16 (D. D.C. 2005) ................................................................. 4

*Ariz. State Legis. v. Ariz. Indep. Redistricting Comm'n*, 576 U.S. 787 (2015) ............................... 6

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) ........................................................................................... 5

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007) ........................................................................... 4

*Comm. on Judiciary of U.S. House of Representatives v. McGahn*, 968 F.3d 755 (D.C. Cir. 2020) .................................................................................................................................................. 6

*DaimerChrysler Corp. v. Cuno*, 547 U.S. 332 (2006) ..................................................................... 6

*Delta Air Lines, Inc. v. Export–Import Bank of U.S.*, 85 F. Supp. 3d 250 (D. D.C. 2015) ............ 4

*Drake v. McNair*, 993 A.2d 607 (D.C. 2010) ................................................................................ 11

*Duffy v. Duffy,* 881 A.2d 630 (D.C. 2005) ...................................................................................... 9

*Eastbanc, Inc. v. Georgetown Park Assocs. II, L.P.*, 940 A.2d 996 (D.C. 2008) ........................... 9

*Ehrenhaft v. Malcolm Price, Inc.*, 483 A.2d 1192 (D.C. 1984) ..................................................... 11

*Felter v. Kempthorne*, 473 F.3d 1255 (D.C. Cir. 2007) ................................................................. 11

*Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9 (D. D.C. 2001) .......... 4

*Hancock v. Urban Outfitters, Inc.*, 830 F.3d 511 (D.C. Cir. 2016) ................................................ 6

*In re Estate of Delaney*, 819 A.2d 968 (D.C. 2003) ...................................................................... 12

*Jack Baker, Inc. v. Office Space Development Corp.*, 664 A.2d 1236 (D.C. 1995) ....................... 9

*Jacobsen v. Oliver*, 201 F. Supp. 2d 93 (D. D.C. 2002) ............................................................... 12

*Jerome Stevens Pharm., Inc. v. F.D.A.*, 402 F.3d 1249 (D.C. Cir. 2005)....................................... 7

*Kaempe v. Myers*, 367 F.3d 958 (D.C. Cir. 2004) ........................................................................ 12

*Kramer Associates v. Ikam, Ltd.,* 888 A.2d 247 (D.C. 2005) ......................................................... 9

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) ......................................................................... 6, 7

*Muhammad v. F.D.I.C.*, 751 F. Supp. 2d 114 (D. D.C. 2010) ......................................................... 4

*Murray v. Lichtman,* 339 F.2d 749 (D.C. Cir. 1964) .................................................................... 10

*Norris v. Salazar*, 885 F. Supp. 2d 402 (D. D.C. 2012)............................................................... 12

*Order of AHEPA v. Travel Consultants, Inc.,* 367 A.2d 119 (D.C. 1976) ................................ 9, 10

*Plan Comm. v. PricewaterhouseCoopers, LLP*, 335 B.R. 234 (D. D.C. 2005)............................. 11

*Rann v. Chao*, 154 F. Supp. 2d 61 (D. D.C. 2001) ......................................................................... 4

*Rosenthal v. National Produce Co.,* 573 A.2d 365 (D.C. 1990) ..................................................... 9

*Rost v. Nat'l R.R. Passenger Corp.,* 1992 WL 220995 (E.D. Pa. 1992) ....................................... 10

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016) ............................................................................. 6

*U.S. v. Cannon*, 642 F.2d 1373 (D.C. Cir. 1981)................................................................ 5

*U.S. v. Martin-Baker Aircraft Co.*, 389 F.3d 1251 (D.C. Cir. 2004) ........................................ 5, 7

*United States ex rel. Conteh v. Ikon Office Solutions, Inc.*, 2014 U.S. Dist. Lexis 34824 (D. D.C. 2014) .............................................................................................................................. 5

*United States v. Lindsay*, 346 U.S. 568 (1954) .......................................................................... 11

*Wahi v. Charleston Area Med. Ctr., Inc.,* 562 F.3d 599 (4th Cir. 2009) ...................................... 5

**Statutes**

D.C. Code § 12-301 .................................................................................................................. 11

**Rules**

Fed. R. Civ. P. 9(b) ................................................................................................................... 5

Fed. R. Civ. P. 12(b)(6)............................................................................................................. 4

Defendant, James Courtovich ("Courtovich"), by counsel, hereby submits the following Memorandum of Law in support of his motion to dismiss the Complaint filed by Plaintiff, Woodland Drive LLC ("Plaintiff"):

## INTRODUCTION

This action arises from funds provided to Courtovich over five years ago from an entity that is not even identified in the Complaint. Puzzlingly, Plaintiff seeks to step into the shoes of the unidentified party and enforce the supposed terms of what Plaintiff characterizes as a loan. However, at the time the funds were provided, Plaintiff was not even in existence. As a matter of law, Plaintiff lacks standing to sue for any alleged misconduct or enforce any agreements that existed prior to its formation. As such, Counts I (fraud), III (breach of contract), IV (wrongful conversion), V (unjust enrichment), and VI (action for accounting) should be dismissed for want of jurisdiction.

Although Plaintiff attempts to manufacture standing under Count II (breach of contract) by seeking to enforce a related agreement purportedly between itself and Courtovich, the Complaint nonetheless fails to state a cause of action. The document attached to the Complaint does not sufficiently define its material terms. Moreover, Plaintiff again relies upon the previously-issued funds as consideration. However, it has been well established under D.C. law that past consideration is insufficient to support an enforceable contract. Without identifying an enforceable contract between Plaintiff and Courtovich, Count II must also be dismissed.

Finally, notwithstanding Plaintiff's lack of standing and pleading deficiencies, the entire Complaint filed in March 2019 should be dismissed because it was filed well outside of the applicable three-year statute of limitations. Plaintiff complains about statements allegedly made

1

in late 2014, a funds issued in March 2015, and a deed of trust from September 2015.  Even if

Plaintiff were able to maintain this action, the Complaint should be dismissed as time-barred.

## SUMMARY OF PLAINTIFF'S ALLEGATIONS

The Complaint begins in "late 2014," when Courtovich allegedly proposed a business

opportunity to Plaintiff, "whereby Plaintiff would provide seed money for a business, S.G.R., LLC,

Government Relations and Lobbying ('SGR'), to be jointly owned by the Parties, with

approximately half of the seed money being used to purchase a property to be used by the business

and the other half to be used in the business."  (Compl. ¶ 1.)  Plaintiff alleges that "[Courtovich's]

proposal was agreed to and as a result, in March of 2015, $4,000,000 was wire transferred directly

to [Courtovich]."  (*Id.* at ¶ 7.)

Despite the Complaint's wording, Plaintiff was not involved in these negotiations with

Courtovich in late 2014 and early 2015, as it was not formed until August 27, 2015.  In fact,

Plaintiff concedes that it did not actually fund the seed money allegedly proposed by Courtovich

(for convenience, the "Loan").  Rather, "Plaintiff **through a related entity** provided the funds to

[Courtovich] . . ."  (*Id.* at ¶ 1 (emphasis added); *see also id.* at ¶ 6.)

According to Plaintiff, once Courtovich obtained the alleged Loan, he thereafter used the

proceeds to purchase the real property located at 625 Massachusetts Avenue, N.E. in Washington,

DC (the "Real Estate").  (*See id.* at ¶ 1, 6, 9-12.)  On or about September 14, 2015, Courtovich

"procured a deed of trust on the Real Estate in the amount of 1.32 million dollars for his own

benefit and to the detriment of Plaintiff" (the "September 2015 Deed of Trust").  (*Id.* at ¶ 11.)

Eight months later, in May of 2016, Plaintiff claims that Courtovich agreed to grant

Plaintiff a security interest in the Real Estate (the "Security Agreement").  (*Id.* at ¶ 9.) Specifically,

Plaintiff alleges that Courtovich "agreed to cooperate with Plaintiff to establish and maintain a

valid and properly perfected security interest in the Real Estate;" "agreed to keep the Real Estate free and clear of all claims, liens or encumbrances other than the security interest provided to Plaintiff;" and "agreed to repay the full amount of the Loan (with interest)." (*Id.* at ¶¶ 9-10.)

In the Complaint, Plaintiff lists six counts. Five of these counts relate to statements made in connection with the Loan or the terms of the Loan itself – even though Plaintiff was not, and could not have been, a party to the Loan. For instance, under Count I (fraud), Plaintiff complains that Courtovich misrepresented "that he would procure the Real Estate and keep it free and clear of encumbrances . . ." and that Plaintiff "relied to its detriment" on Courtovich's misrepresentations in issuing the Loan. (*Id.* at ¶ 14.) Under Count III (breach of contract), Plaintiff complains that Courtovich breached the terms of the Loan by failing to provide Plaintiff an interest in SGR. (*See id.* at ¶ 23.) Counts IV (wrongful conversion) and V (unjust enrichment) seek to recoup the Loan's proceeds due to Courtovich's alleged failure to comply with the terms of the Loan. (*See id.* at ¶¶ 25, 31.) Under Count VI (action for accounting), Plaintiff claims that it "has a common law right to obtain an equitable accounting from [Courtovich] for the funds transferred as a Loan." (*Id.* at ¶ 34.)

Additionally, Plaintiff asserts one count seeking to enforce the alleged Security Agreement. According to Plaintiff, "[Courtovich] signed a Security Agreement agreeing to give [Plaintiff] a security interest in the Real Estate and, but for that security interest, not to encumber the Real Estate" and breached the Security Agreement, dated March 2016, by obtaining the September 2015 Deed of Trust. (*Id.* at ¶¶ 17-18.)

### STANDARD OF REVIEW

#### *Rule 12(b)(1) Motion*

"Under Rule 12(b)(1), it is to be presumed that a cause lies outside the federal courts' limited jurisdiction, unless the plaintiff establishes by a preponderance of the evidence that the

Court possesses jurisdiction." *Muhammad v. F.D.I.C.*, 751 F. Supp. 2d 114, 118 (D. D.C. 2010) (internal quotation marks, citations, and alteration omitted). In other words, Rule 12(b)(1) imposes on the Court an "affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority[.]" *Abu Ali v. Gonzales*, 387 F. Supp. 2d 16, 17 (D. D.C. 2005) (internal quotation marks and citations omitted).

When ruling on a Rule 12(b)(1) motion, the Court must "treat the complaint's factual allegations as true" and must afford the plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Delta Air Lines, Inc. v. Export–Import Bank of U.S.*, 85 F. Supp. 3d 250, 259 (D. D.C. 2015) (internal quotation marks and citation omitted). However, those factual allegations receive "closer scrutiny" than they would in the Rule 12(b)(6) context, *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D. D.C. 2001) (internal quotation marks and citation omitted), and the Court need not "accept inferences unsupported by the facts alleged or legal conclusions that are cast as factual allegations[.]" *Rann v. Chao*, 154 F. Supp. 2d 61, 64 (D. D.C. 2001).

### *Rule 12(b)(6) Motion*

Federal Rule of Civil Procedure 12(b)(6) requires dismissal of a complaint if it "fail[s] to state a claim upon which relief can be granted." To survive a Rule 12(b)(6) motion, "[f]actual allegations must be enough to raise a right to relief above the speculative level" and have "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "[P]laintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 (internal citations and quotations omitted). Conclusory statements are not accepted as true. *Id.* Bare assertions, along with unwarranted inferences, unreasonable conclusions, or arguments will not be considered. *See Ashcroft v. Iqbal,*

4

556 U.S. 662, 681-82 (2009); *Wahi v. Charleston Area Med. Ctr., Inc.,* 562 F.3d 599, 615 n.26 (4th Cir. 2009). Further, when considering a motion to dismiss, the Court is not required to accept the legal conclusions in a complaint, as those are questions of law for the Court to decide. *Iqbal,* 556 U.S. at 678 (citation omitted).

With regarding to claims sounding in fraud – such as Count I of the Complaint – plaintiffs must satisfy the "heightened" pleading standard under Rule 9(b).  *See United States ex rel. Conteh v. Ikon Office Solutions, Inc.*, 2014 U.S. Dist. Lexis 34824, at *10 (D. D.C. 2014) (citing Fed. R. Civ. P. 9(b)).  Rule 9(b) requires that, "[i]n alleging fraud or mistake, a party must state **with particularity** the circumstances constituting fraud or mistake."  Fed. R. Civ. Pro. 9(b) (emphasis added).  Such circumstances include "the time, place and content of the false misrepresentations, the fact misrepresented and what was retained or given up as a consequence of the fraud," as well as identify the individuals allegedly involved in the fraud.  *U.S. v. Martin-Baker Aircraft Co.*, 389 F.3d 1251, 1256 (D.C. Cir. 2004) (quoting *U.S. v. Cannon*, 642 F.2d 1373, 1385 (D.C. Cir. 1981)).

<b>ARGUMENT</b>

I.    **Plaintiff Lacks Standing to Maintain Counts I (Fraud), III (Breach of Contract), IV (Wrongful Conversion), V (Unjust Enrichment), and VI (Action for Accounting) Because the Alleged Misconduct Occurred Prior to August 27, 2015, When Plaintiff Was Formed.**

Plaintiff is not the proper party to maintain nearly every claim asserted in this action.  Based on the allegations in the Complaint, the proper party would be the unidentified "related entity" that allegedly loaned the $4 million to Courtovich in March of 2015.  Plaintiff was formed *after* Courtovich allegedly received the alleged Loan and *after* Courtovich used the proceeds of alleged Loan to purchase the Property.  As pled, it is impossible for Plaintiff to have been injured by statements allegedly made by Courtovich in connection with the Loan or by Courtovich's alleged noncompliance with the terms of the Loan.  Without any connection between Courtovich's alleged

5

misconduct and any actual injury experienced by Plaintiff, the Court lacks jurisdiction to adjudicate Counts I (fraud), III (breach of contract), IV (wrongful conversion), V (unjust enrichment), and VI (action for accounting).

Standing is an "'essential and unchanging' component" of jurisdiction. *Hancock v. Urban Outfitters, Inc.*, 830 F.3d 511, 513 (D.C. Cir. 2016) (quoting *DaimerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006)). The standing inquiry is "[t]rained on whether the plaintiff is [a] proper party to bring [a particular lawsuit]." *Comm. on Judiciary of U.S. House of Representatives v. McGahn*, 968 F.3d 755, 762 (D.C. Cir. 2020) (*en banc*) (alterations in original) (quoting *Ariz. State Legis. v. Ariz. Indep. Redistricting Comm'n*, 576 U.S. 787, 799 (2015)). It "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1546 (2016).

Plaintiff carries the burden of establishing the elements of standing "with the manner and degree of evidence required at the successive stages of litigation." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). At the pleading stage, the plaintiff must "clearly . . . allege facts demonstrating" the existence of standing. *Spokeo*, 136 S. Ct. at 1547 (citation omitted).

Article III requires that the plaintiff establish "the irreducible constitutional minimum of standing." *Lujan*, 504 U.S. at 560. First, the plaintiff must have suffered an injury in fact – that is, "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal quotation marks and citations omitted). Second, the plaintiff must allege "a causal connection between the injury and the conduct complained of[;]" in other words, "the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court[.]" *Id.* (internal quotation marks, citation, and alterations omitted).

6

Third, the complaint must state facts that make it "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 561 (internal quotation marks and citation omitted).

Here, Plaintiff did not exist at the time Courtovich allegedly proposed, negotiated, and received the alleged Loan from the unidentified "related entity." As alleged in the Complaint, Courtovich made a proposal for seed money for SGR "[i]n late 2014." (Compl. ¶ 1; *see also id.* at ¶ 6) and the unidentified "related entity" issued the Loan in "March of 2015." (*Id.* at ¶ 7.) However, Plaintiff did not exist until August 27, 2015, the date of its formation. *See* Online Records from the Delaware Department of State, Division of Corporations, attached hereto as Exhibit A.[1] Consequently, the injury alleged in the Complaint pre-dates Plaintiff's existence.

Under Count I (fraud), Plaintiff alleges that, in connection with the Loan, Courtovich "falsely represented that he would procure the Real Estate and keep it free and clear of encumbrances . . ." and that "Plaintiff relied to its detriment upon [Courtovich's] representation and has been injured thereby." (Compl. ¶ 14.) As Plaintiff did not exist when the Loan was made, Plaintiff could not have "relied to its detriment" on any representation Courtovich made in connection with the Loan. Nor could it have been injured by any representation Courtovich made in connection with the Loan.[2]

---

[1] When considering a motion challenging jurisdictional standing under Rule 12(b)(1), in contrast to a motion under Rule 12(b)(6), a court may look to documents outside of the complaint in order to evaluate whether or not it has jurisdiction to entertain a claim. *See Jerome Stevens Pharm., Inc. v. F.D.A.*, 402 F.3d 1249, 1253 (D.C. Cir. 2005) (noting that "may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction").

[2] Although Plaintiff's standing is a threshold issue, Count I (fraud) should also be dismissed due to its failure to satisfy Rule 9(b)'s heightened pleading standard. Plaintiff fails to allege "the time, place and content of the false misrepresentations, the fact misrepresented and what was retained or given up as a consequence of the fraud," and does not identify the individuals allegedly involved in the fraud. *Martin-Baker Aircraft*, 389 F.3d at 1256.

7

Under Count III (breach of contract), Plaintiff alleges that Courtovich "agreed to give Plaintiff a security interest in SGR in return for the investment seed money Plaintiff provided [] to establish SGR."  Plaintiff was not a party to any agreement entered into in connection with the Loan because Plaintiff did not exist in March 2015.

Relatedly, Counts IV (wrongful conversion), V (unjust enrichment), and VI (action for accounting) arise from Courtovich failing to comply with the terms of the alleged Loan.  (*See* Compl. ¶¶ 25 ("[Courtovich] knowingly obtained funds from the Real Estate he agreed to keep free of encumbrances."); 31 ("[Courtovich] falsely represented that he would procure the Real Estate and keep it free and clear of encumbrances . . ."); 34 ("Plaintiff has a common law right to obtain an equitable accounting from [Courtovich] for the funds transferred as a Loan.").)  As Plaintiff did not exist when the alleged Loan was proposed, negotiated, and issued, it lacks standing to enforce any rights under the alleged Loan or to seek damages related to Courtovich's alleged noncompliance with the alleged terms of the Loan.

Plaintiff is simply not the proper party to maintain this action, as it is currently pled.  It has not identified any injury in fact that it suffered – as opposed to the injury allegedly suffered by the unidentified "related entity" that issued the alleged Loan.  (*See* Compl. ¶¶ 1 (conceding that the Loan was made by a "related entity"), 6 (same).)  It has not identified any causal connection between an alleged injury it suffered and any of Courtovich's alleged conduct.  Finally, the Court is unable to redress any injury asserted by Plaintiff because the applicable causes of action (if any exist) would lie with the unidentified "related entity" that issued the alleged Loan, not Plaintiff. At the outset of this action, Courtovich respectfully requests that the Court dismiss Counts I (fraud), III (breach of contract), IV (wrongful conversion), V (unjust enrichment), and VI (action for accounting) due to Plaintiff lacking Article III standing.

**II.     Count II (Breach of Contract) Should Be Dismissed Because the Security Agreement Is Unenforceable.**

While nearly every claim in the Complaint seeks to enforce rights under the alleged Loan (to which Plaintiff was not a party), Plaintiff does seek to enforce the terms of the alleged Security Agreement against Courtovich under Count II.  However, the alleged Security Agreement cannot salvage the Complaint from its fundamental flaw – it should have been filed by the entity that actually issued the alleged Loan and was allegedly harmed by the alleged misconduct.  While Plaintiff attempted to manufacture standing by entering into the alleged Security Agreement, it is unenforceable because it does not sufficiently define its terms and ultimately lacks consideration on its own.

"'The determination whether an enforceable contract exists, when based on the contract documents, is a question of law. . . .'" *Kramer Associates v. Ikam, Ltd.,* 888 A.2d 247, 251 (D.C. 2005) (citing *Rosenthal v. National Produce Co.,* 573 A.2d 365, 369 n. 9 (D.C. 1990)).  Notably, "the party asserting the existence of a contract has the burden of proof on that issue." *Jack Baker, Inc. v. Office Space Development Corp.,* 664 A.2d 1236, 1238 (D.C. 1995).

For a contract to be enforceable, "there must be '(1) an agreement to all material terms, and (2) intention of the parties to be bound.'"  *Duffy v. Duffy,* 881 A.2d 630, 634 (D.C. 2005) (quoting *Jack Baker,* 664 A.2d at 1238).  In addition, the contract must be supported by consideration – usually, a "mutuality of obligation." *See, e.g., Order of AHEPA v. Travel Consultants, Inc.,* 367 A.2d 119, 125 (D.C. 1976); *Eastbanc, Inc. v. Georgetown Park Assocs. II, L.P.*, 940 A.2d 996, 1002 (D.C. 2008).

Here, the alleged Security Agreement lacks two critical elements of an enforceable contract.  First, the alleged Security Agreement is not sufficiently definite as to its material terms. *See Rosenthal,* 573 A.2d at 370 ("A contract must be sufficiently definite as to its material terms

9

(which include, *e.g.,* subject matter, price, payment terms, quantity, quality, and duration) that the promises and performance to be rendered by each party are reasonably certain.") (citation omitted). It does not identify the property to be secured. It does not identify the terms of the alleged Loan. In fact, it does not even identify the party that supposedly issued the alleged Loan to Courtovich. The failure to define these material terms creates a level of ambiguity that prevents the alleged Security Agreement from being enforceable.

Second, the alleged Security Agreement lacks consideration. Indeed, for a contract to be enforceable, each party must undertake to "do something [the] party otherwise is under no legal obligation to do, or to refrain from doing something [the] party has a legal right to do. . . ." *Order of AHEPA,* 367 A.2d at 125. The express terms of the alleged Security Agreement do not identify any obligation to be undertaken by Plaintiff. (*See* Compl. ¶ Ex. 1.)

To the extent the alleged Security Agreement identifies the alleged Loan as consideration, this is insufficient as a matter of law. Notably, as discussed above, the alleged Loan was not issued by Plaintiff, which did not exist in March 2015. Regardless, it is "well settled" under D.C. law that "past consideration is no consideration." *Murray v. Lichtman,* 339 F.2d 749, 752 (D.C. Cir. 1964) (citing 1 Williston, Contracts § 142 (3d ed. 1957). Similarly, under D.C. law, "[w]here there is a preexisting duty to perform an obligation, a promise to perform the same obligation may not serve as consideration." *Rost v. Nat'l R.R. Passenger Corp.,* 1992 WL 220995, * 5 (E.D. Pa. 1992) (applying D.C. law).

Overall, Plaintiff cannot circumvent its lack of standing to enforce the alleged Loan by suing under the alleged Security Agreement. The alleged Security Agreement does not sufficiently define its material terms (or the terms of the Loan) and ultimately lacks consideration to be enforceable. As such, the Court should dismiss Count II (breach of contract) with prejudice.

10

### III.    Plaintiff's Claims Are Time-Barred.

Even if Plaintiff were permitted to maintain this action, the face of the Complaint clearly demonstrates that all of Plaintiff's claims are time-barred.   Under D.C. law, the statute of limitations applicable to tort and breach of contract claims is three (3) years "from the time the right to maintain the action accrues."  D.C. Code § 12-301(2), (7), (8).  "Actions usually accrue 'when they come into existence.'"  *Felter v. Kempthorne*, 473 F.3d 1255, 1259 (D.C. Cir. 2007) (citing *United States v. Lindsay*, 346 U.S. 568, 569 (1954)).

Under certain circumstances, D.C. courts will apply the "discovery rule" to toll the accrual of the statute of limitations "until the plaintiff knows, or in the exercise of reasonable diligence should know, of the injury." *Ehrenhaft v. Malcolm Price, Inc.*, 483 A.2d 1192, 1203 (D.C. 1984). This Court explained the discovery rule as follows:

> When the discovery rule applies, a cause of action accrues when the plaintiff knows or by the exercise of reasonable diligence should know "(1) of the injury, (2) its cause in fact, and (3) of some evidence of wrongdoing." . . . Further, "it is only necessary that the plaintiff have inquiry notice of the existence of a cause of action" for the statute of limitations to begin to run…. Therefore, "a plaintiff can be charged with inquiry notice of his claims even if he is not actually aware of each essential element of his cause of action." . . . "The fact that [the plaintiff] did not then comprehend the full extent of all [elements] does not matter, for the law of limitations requires only that [it] have inquiry notice of the existence of a cause of action…"

*Plan Comm. v. PricewaterhouseCoopers, LLP*, 335 B.R. 234, 252-53 (D. D.C. 2005) (citations omitted).  Significantly, with regard to inquiry notice, both federal and local courts within the District of Columbia have held that plaintiffs are considered to be on inquiry notice based on the existence of public records that contain facts relevant to their claims.  *See, e.g., Drake v. McNair*, 993 A.2d 607, 618-19 (D.C. 2010) (holding that plaintiff was on inquiry notice of her claims based on the existence of public land records that contained the facts relevant to her claims); *In re Estate*

11

*of Delaney*, 819 A.2d 968, 982 (D.C. 2003) (holding that the plaintiff's claims were time-barred where, although she had suspicions about a will's authenticity, she did not make a "reasonable, prompt, and diligent inquiry" into the matter); *Jacobsen v. Oliver*, 201 F. Supp. 2d 93, 110 (D. D.C. 2002) (holding that the plaintiffs' claims had expired where "[t]wo matters of public record . . . provided inquiry, if not actual, notice to the plaintiffs").

Here, Plaintiff complains about allegedly fraudulent statements made in late 2014 (*see* Compl. ¶¶ 1, 6); a business loan allegedly issued in March 2015 (*see id.* at ¶ 7); and a deed of trust allegedly obtained in September 2015 (*see id.* at ¶ 11). However, Plaintiff failed to initiate this action until March 18, 2019, well over three years later than any of the alleged misconduct.

Notably, the discovery rule cannot salvage Plaintiff's claims. Plaintiff expressly identifies a deed of trust dated "[o]n or about September 4, 2015," as allegedly being obtained "in contravention of the Security Agreement and unbeknownst to Plaintiff." (Compl. ¶ 11.) However, the deed of trust was recorded with the D.C. Recorder of Deeds on September 11, 2015. *See* September 2015 Deed of Trust, as recorded in with the D.C. Recorder of Deeds, attached hereto as Exhibit B.[3] As a matter of law, Plaintiff was on inquiry notice of its claims by September 11, 2015, at the latest. Accordingly, Plaintiff's claims should be dismissed as time-barred.

---

[3] "Documents that are referenced in, or are an integral part of the complaint are deemed not 'outside the pleadings'" for purposes of a motion to dismiss for failure to state a claim. *Norris v. Salazar*, 885 F. Supp. 2d 402, 407 n. 9 (D. D.C. 2012). This includes documents "appended to [a motion to dismiss] and whose authenticity is not disputed" if they are "referenced to in the complaint and are integral" to a plaintiff's claim. *Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004). Thus, the Court is permitted to consider the September 2015 Deed of Trust because it is explicitly referenced in Plaintiff's own Complaint without converting this Motion to a Motion for Summary Judgment.

12

## CONCLUSION

Plaintiff seeks to step into the shoes of the "related entity" that allegedly provided Courtovich with a business loan in March 2015, but has failed to provide any basis for doing so. Given the substance of the Complaint, Plaintiff has failed to show that it has standing to maintain this action. Regarding Plaintiff's attempt to enforce the alleged Security Agreement attached to the Complaint, Plaintiff has failed to demonstrate that this document is enforceable – not only does this document fail to sufficiently define its terms, but it is also lacking consideration. Moreover, even if Plaintiff were to avoid these pleading deficiencies, it cannot salvage a Complaint filed well over three years after its claims accrued. Accordingly, Courtovich respectfully requests that the Court dismiss the Complaint in its entirety.

Dated:  December 7, 2020

Respectfully Submitted,

*/s/ Alexander R. Green*

Russell D. Duncan (D.C. Bar No. 366888)
Alexander R. Green (D.C. Bar No. 1017781)
CLARK HILL PLC
1001 Pennsylvania Avenue, N.W.
Suite 1300 South
Washington, DC 20004
Telephone:  (202) 640-6657
Facsimile:  (202) 552-2377
Email:      rduncan@clarkhill.com
            agreen@clarkhill.com

*Counsel for Defendant*
*James Courtovich*

13

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of December, 2020, a true a correct copy of the above and foregoing was electronically filed with the Clerk of the Court through CM/ECF, which will send notice to the following counsel of record:

Andrew N. Cook, Esq.
K&L GATES LLP
1601 K Street, N.W.
Washington, DC 20006

/s/ Alexander R. Green
Alexander R. Green (D.C. Bar No. 1017781)
CLARK HILL PLC

14