## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

WOODLAND DRIVE LLC,

          *Plaintiff,*

    v.

JAMES COURTOVICH,

          *Defendant*.

Civil Action No. 1:19-cv-00750 (CJN)

### MEMORANDUM OPINION

In 2015, James Courtovich received millions for agreeing to spearhead a new lobbying business. *See* Compl., ECF No. 1 at ¶ 1. Woodland Drive LLC claims that Courtovich pocketed the windfall, and that he breached various contracts and committed various torts under District law against the corporation in doing so. *See generally id.* As a result, Woodland has filed a lawsuit alleging six separate counts against Courtovich. *See generally id.* Courtovich has moved to dismiss each of them. *See generally* Def.'s Mot. to Dismiss. ("Def.'s Mot."), ECF No. 24. The Court denies Courtovich's Motion for reasons that follow.

### I.    Background

In late 2014, Courtovich pitched a business plan where he would establish a limited liability corporation (called SGR) to engage in government relations and lobbying efforts in exchange for seed funding. *See* Compl. ¶ 6. In March 2015, Courtovich borrowed $4,000,000 from an entity related to Woodland Drive so he could get SGR off the ground. *Id.* The loan served two ends. First, half of the funds were earmarked to purchase a piece of property in the District to house the

business operations.  *Id.*  Second, the remaining funds were set aside to get SGR up and running. *Id.*

In August 2015, Woodland Drive became an official corporation under Delaware law.  *See* Def.'s Mot., ECF No. 24-2, Ex. A.  Roughly a year after that, in May 2016, Woodland Drive and Courtovich entered into a security agreement.  *See* Pl.'s Reply in Opp'n to Def.'s Mot. to Dismiss ("Pl.'s Opp'n"), ECF No. 28-1, Ex. A at 6.  The agreement specifies that the investor, defined as Woodland Drive, "invested . . . $4,000,000 . . . for the benefit of SGR."  *Id.*  It stipulates that Courtovich, defined as the grantor, agreed to purchase property to get SGR on its feet.  *Id.*  It also obligated Courtovich to grant Woodland Drive a security interest in the property, and it required him to keep the property free and clear of all encumbrances.  *Id.*  The agreement, too, states that Courtovich agreed to observe "obligations" between the parties.  *Id.*  And it marks March 9, 2015, as the agreement's effective date.  *Id.*  As Woodland Drive sees things, the security agreement memorialized the terms and conditions of the business arrangement starting with the loan that was made to Courtovich in early 2015.  Compl. ¶ 1.

Woodland Drive asserts that nothing went as planned after the parties signed the security agreement.  In particular, Courtovich, Woodland Drive claims, declined to grant it a security interest in SGR, refused to provide financial information about SGR, failed to repay the loan, encumbered the purchased property, and engaged in all-around deceitful conduct.  *Id.* ¶¶ 8, 11.

In light of Courtovich's alleged actions, Woodland Drive has brought six counts under District law: (1) fraud, (2) breach of contract for failing to grant the corporation an interest in the

property, (3) breach of contract for failing to grant the corporation an interest in SGR, (4) wrongful conversion, (5) unjust enrichment, and (6) an action for accounting.  *See generally id*.

Courtovich has moved to dismiss each of the counts.  *See* Def.'s Mot.  He argues that the fraud claim, the breach of contract claim as to the interest in SGR, the wrongful conversion claim, the unjust enrichment claim, and the action for accounting claim should all be dismissed for lack of Article III jurisdiction.  *Id.* at 5.  He also contends that the breach of contract claim for failing to grant Woodland Drive an interest in the property should be dismissed because the corporation cannot demonstrate an enforceable contract.  *Id.*  And he argues that, notwithstanding the standing issues and pleading deficiencies, the Complaint should be dismissed because it was filed outside the statute of limitations.  *Id.*

## I.    Standard of Review

Federal Rule of Civil Procedure 12(b)(1) requires dismissal of a complaint if the Court lacks "subject-matter jurisdiction."  *See* Fed. R. Civ. P. 12(b)(1).  When ruling on a motion filed under Civil Rule 12(b)(1), the Court must "treat the complaint's factual allegations as true" and must afford the plaintiff "the benefit of all inferences that can be derived from the facts alleged."  *Delta Air Lines, Inc. v. Export–Import Bank of U.S.*, 85 F. Supp. 3d 250, 259 (D.D.C. 2015) (quotation omitted).  Although the Court need not accept inferences unsupported by the facts alleged, the Court "may consider such materials outside the pleadings as it deems appropriate to resolve the question whether it has jurisdiction to hear the case."  *XP Vehicles, Inc. v. Dep't of Energy*, 118 F. Supp. 3d 38, 56 (D.D.C. 2015) (quotation omitted).

Federal Rule of Civil Procedure 12(b)(6) requires dismissal of a complaint if it "fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To survive a motion to dismiss filed under Civil Rule 12(b)(6), a plaintiff must plead "facts to state a claim of relief that

is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A court treats the "complaint's factual allegations as true and afford[s] the plaintiff the benefit of all inferences that can be derived from the facts alleged." *Atlas Brew Works, LLC v. Barr*, 391 F. Supp. 3d 6, 11 (D.D.C. 2019) (quotation omitted). Although the Court accepts all well pleaded facts in the complaint as true, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The claim to relief must be "plausible on its face," *id.*, meaning that the plaintiff must have pleaded "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[1]

When a claim sounds in fraud, the plaintiff must satisfy the "heightened" pleading standard under Civil Rule 9(b). *See United States ex rel. Cimino v. Int'l Bus. Machines Corp.*, 3 F.4th 412, 421 (D.C. Cir. 2021). Civil Rule 9(b) requires that when "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Such circumstances require the plaintiff to "state the time, place and content of the false misrepresentations" and to "identify individuals allegedly involved in the fraud." *Aston v. Johnson & Johnson*, 248 F. Supp. 3d 43, 54 (D.D.C. 2017) (quotation omitted).

## II.    Standing as to Five of the Six Counts

Courtovich claims that Woodland Drive "is not the proper party to maintain nearly every claim asserted" because the corporation "was formed after Courtovich allegedly received the alleged loan and after Courtovich used the proceeds of the alleged loan to purchase the property." Def.'s Mot. at 9. Put differently, Courtovich contends that because Woodland Drive did not exist

---

[1] "In determining whether a complaint fails to state a claim," courts in the typical case "consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the Court] may take judicial notice." *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).

at the time of those alleged actions, it could not have suffered an injury from them. *Id.* As a result, he argues, Woodland Drive lacks standing to enforce any rights under the loan or to seek damages related to Courtovich's alleged noncompliance with the terms.

The Constitution of the United States limits the "judicial Power" to resolving "Cases" and "Controversies." U.S. Const. art. III, § 2. To satisfy the case-or-controversy requirement, a plaintiff must show that she has "suffered an injury in fact," that is, "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (quotation omitted). Second, the plaintiff must allege "a causal connection between the injury and the conduct complained of." *Id.* (quotation omitted). In other words, "the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Id.* (quotation omitted). Third, the plaintiff must state facts that make it "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 561 (quotation omitted). At the pleading stage, the plaintiff must "clearly . . . allege facts demonstrating" the existence of standing. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (quotation omitted). Stated differently, the plaintiff must assure the Court that it is a proper party to bring the lawsuit. *Arizona State Legislature v. Arizona Indep. Redistricting Comm'n*, 576 U.S. 787, 799 (2015).

The Complaint, along with attached exhibits, describe a single transaction over the course of more than a year. According to the Complaint, the single transaction, while drawn-out, started with Courtovich's business proposal, led to the securement of seed funding, advanced to a signed

agreement, and concluded with alleged breach.  Based on those allegations, Woodland Drive has standing to assert the claims in its Complaint.[2]

Moreover, correspondence between Courtovich and representatives of Woodland Drive evinces Courtovich's knowledge of the existence of the corporation prior to its official incorporation in August 2015.  Take, for example, an email sent on May 28, 2015, from Courtovich in which Courtovich denotes the subject line as "Woodland and SGR."  Pl.'s Opp'n, Ex. A at 4. A representative's response to that email noted that although Woodland Drive was in the offing, "the Delaware corporation, Woodland, [had not yet been] established."  *Id.*  In an email sent roughly a year later, on March 18, 2016, Courtovich recognized the initial loan and the later agreement regarding the property as a single drawn-out transaction rather than two separate deals. Courtovich stated that "[a]s for the signature on the house, we would like to wait just a few more months.  We have cleared the hurdle of the cease order on the house based on neighbors complained that we were running a business out of there.  We had the cease order pulled in a few

---

[2] The Court pauses to note two theories (both admittedly unbriefed) by which Woodland Drive may have standing to assert the claims in its Complaint.  Further proceedings may elucidate the viability of either route.  In the meantime, the Court decides that the allegations suffice to show Woodland Drive has standing.

First, District law recognizes the general rule that "all contractual rights may be assigned."  *Brandenburger & Davis, Inc. v. Est. of Lewis*, 771 A.2d 984, 988 (D.C. 2001) (quotation omitted).  Assuming the unnamed "related entity" should be considered Courtovich's true counterparty with regard to the allegedly separate loan agreement, that entity may have assigned its contractual rights to Woodland Drive thereafter.  Indeed, the May 2016 security agreement may reflect an implicit assignment of the related entity's rights to Woodland Drive.

Second, it is plausible that the "related entity" acted as Woodland Drive's "promoter."  *See Jones v. Health Res. Corp. of Am.*, 509 A.2d 1140, 1147 n.15 (D.C. 1986) (defining promoters as "[t]hose who take an active part in organizing the corporation prior to its coming into being") (quotation omitted); *Blish v. Thompson Automatic Arms Corp.*, 64 A.2d 581, 594–95 (Del. Ch. 1948) (defining "promoter" as including "those who undertake to form a corporation and to procure for it the rights, instrumentalities and capital by which it is to carry out the purposes set forth in its charter, and to establish it as fully able to do its business") (quotation omitted).  Assuming the related entity served as Woodland Drive's promoter prior to its incorporation, the security agreement between Courtovich and Woodland Drive could be viewed as the ratification and adoption of the alleged separate investment agreement.  *See Lucas v. Hamilton Realty Corp.*, 105 F.2d 800, 803 (D.C. Cir. 1939) (noting that a "corporation is generally said to adopt the promoter's contract and thereby acquire rights . . . or incur liabilities") (quotation omitted); *Lorillard Tobacco Co. v. Am. Legacy Found.*, 903 A.2d 728, 744 (Del. 2006); *see, e.g., Walnut Park Lumber & Coal Co. v. Roane*, 17 P.2d 896, 898 (Wash. 1933) ("If promoter Kelly, who later became manager and president of the corporation, made contracts, prior to incorporation, in the interests of his corporation, and those contracts were approved by the company subsequent to incorporation, such ratification is binding upon the corporation.").

days but still wanted to be careful, that is why I offered you to put a hold on Woodland Drive in the interim, so you could have your collateral and we could get past this small bump with the lovely neighbors of capitol hill." *Id.* at 2. Courtovich sent that email about two months before signing the security agreement.

It is also a plausible inference from the allegations that Woodland Drive has standing. After all, Courtovich contends that he received $4,000,000 from a party related to Woodland Drive, and then at a later point in time signed what he asserts to be an unrelated contract with Woodland Drive for $4,000,000 (with that later agreement specifying that Courtovich would purchase the very same piece of property). What's more, Woodland Drive bears the same name of the street where Courtovich currently resides in the District. *See* Pl.'s Mot. for Default J., ECF No. 9 at 1 (noting that Courtovich resides at "2900 Woodland Drive, N.W., Washington, DC"). Surely a plausible inference is that Woodland Drive was always intended to be Courtovich's contractual counterparty.

Courtovich fights this conclusion by asserting that he involved himself in two transactions rather than one. In his view, the initial seed funding and the later security agreement were separate and distinct from one another, involved different parties, and took place a year apart. *See* Def.'s Reply in Supp. of Mot. to Dismiss, ECF No. 29 at 4. But that is not what the Complaint alleges. At a minimum, it plausibly alleges that that Woodland Drive was his counterparty from the start, even though the corporation had not yet been formally incorporated at the time Courtovich received the seed funding.[3]

---

[3] In a footnote, Courtovich contends that Woodland Drive's claim of fraud "should also be dismissed due to its failure to satisfy [Civil] Rule 9(b)'s heightened pleading standard." Def.'s Mot at 11 n.2. In particular, Courtovich argues that Woodland Drive "fails to allege the time, place and content of the false misrepresentations, the fact misrepresented and what was retained or given up as a consequence of the fraud, and does not identify the individuals allegedly involved in the fraud." *Id.* (quotation omitted). The Court disagrees. Taking Woodland Drive's allegations as true, the facts state a viable fraud claim against Courtovich through his representations that he would use the $4,000,000 loan for the business venture and would grant the corporation a security interest in either the property or SGR—both

### III.   Breach of Contract Claim for Failing to Grant Woodland Drive an Interest in SGR

Courtovich contends that the security agreement "is unenforceable because it does not sufficiently define its terms and ultimately lacks consideration on its own." Def.'s Mot at 13. In particular, Courtovich posits that the security agreement is not sufficiently definite as to its material terms, and that it lacks consideration. *Id.* at 13–14.

Under District law, the "determination whether an enforceable contract exists, when based on the contract documents, is a question of law." *Kramer Assocs., Inc. v. Ikam, Ltd.*, 888 A.2d 247, 251 (D.C. 2005) (quotation omitted). The party asserting the existence of a contract has the burden of proving it existed. *Id.* "For a contract to be enforceable, the parties must (1) express an intent to be bound, (2) agree to all material terms, and (3) assume mutual obligations." *Dyer v. Bilaal*, 983 A.2d 349, 356 (D.C. 2009). As to the first element, though a "meeting of the minds, or mutual assent, is most clearly evidenced by the terms of a signed written agreement . . . such a signed writing is not essential to the formation of a contract. The parties' acts at the time of the making of the contract are also indicative of a meeting of the minds." *Carter v. Bank of Am.*, 845 F. Supp. 2d 140, 144 (D.D.C. 2012) (quotation omitted). As to the second element, "[a] contract must be sufficiently definite as to its material terms (which include, e.g., subject matter, price, payment terms, quantity, quality, and duration) that the promises and performance to be rendered by each party are reasonably certain." *Eastbanc, Inc. v. Georgetown Park Assocs. II, L.P.*, 940 A.2d 996, 1002 (D.C. 2008) (quotation omitted). As to the third element, a mutuality of obligation "exists when each party undertakes to do something the party is otherwise under no legal obligation

---

of which he allegedly did not do. *See Antoine v. U.S. Bank Nat. Ass'n*, 547 F. Supp. 2d 30, 39 (D.D.C. 2008) (noting that to state a claim of fraud, the plaintiff must satisfy the following elements: (1) a false representation; (2) made in reference to a material fact; (3) with knowledge of its falsity; (4) with the intent to deceive; (5) resulting in detrimental reliance by the plaintiff).

to do." *Di Lella v. Univ. of D.C. David A. Clarke Sch. of L.*, 570 F. Supp. 2d 1, 11 (D.D.C. 2008) (quotation omitted).

Based on the allegations contained in the Complaint as well as the attached exhibits, Woodland Drive has carried its burden of showing at the pleading stage that Courtovich agreed to an enforceable contract. In early 2015, Courtovich proposed a business deal in which he would receive $4,000,000 to purchase property as part of the transaction. That arrangement led the parties to sign an agreement. A year or so later, Courtovich and Woodland Drive put pen to paper when they memorialized the terms in a security agreement. That the prolonged and drawn-out transaction involved several steps does not mean that the steps bore no relation to one another. It is plausible, based on the allegations in the Complaint, that the steps reflected a single transaction. As a result, the security agreement is enforceable because it satisfies the elements of an enforceable contract.

Courtovich counters, contending that the security agreement failed to identify the details of performance and therefore is not sufficiently definite as to its material terms. True, the security agreement does not identify *all* the details of performance nor does it identify *all* the parties' various obligations. But the law requires less. "*All* the terms contemplated by the agreement need not be fixed with complete and perfect certainty for a contract to be enforceable." *LanQuest Corp. v. McManus & Darden LLP*, 796 F. Supp. 2d 98, 102 (D.D.C. 2011) (quotation omitted) (emphasis added). Rather, the contract terms "must be clear enough for the court to determine whether a breach has occurred and to identify an appropriate remedy." *Queen v. Schultz*, 747 F.3d 879, 885 (D.C. Cir. 2014) (quotation omitted). The Court concludes that the parties can discern their performance obligations from the security agreement, and that the security agreement therefore is sufficiently definite as to its material terms.

Courtovich also argues that the security agreement lacks consideration because Courtovich received the $4,000,000 loan before signing the security agreement.  In other words, he posits that the general rule that "past consideration is no consideration" applies here.  *Braude & Margulies, P.C. v. Fireman's Fund Ins. Co.*, 468 F. Supp. 2d 190, 196–97 (D.D.C. 2007) (quotation omitted). This argument, however, fails for two reasons.  First, the security agreement itself, though executed after Courtovich's receipt of funds, is the document in which the parties detailed their agreement, which spanned over the course of a year.  Indeed, other courts have concluded that consideration existed despite two separate agreements, because the two events constituted a "single transaction," which the parties contemplated from the outset.  *See AGR-Keast, L.L.P. v. Steen*, 798 N.W.2d 349 (Iowa Ct. App. 2011).  Second, District law makes clear that if "a debtor simply acknowledges an old debt, the law implies from that simple acknowledgment a promise to pay it; for which promise the old debt is a sufficient consideration."  *Tiger Steel Eng'g, LLC v. Symbion Power, LLC*, 195 A.3d 793, 798 n.2 (D.C. 2018) (quotation omitted).   Here, at a minimum, Courtovich through the security agreement acknowledged an old debt owed to Woodland Drive.  Indeed, recall that the agreement specifies that the investor, defined as Woodland Drive, "invested . . . $4,000,000 . . . for the benefit of SGR."  *See* Pl.'s Opp'n, ECF No. 28-1, Ex. A at 6.  It then stipulates that Courtovich, defined as the grantor, agreed to purchase property to get SGR on its feet.  *Id.*

Courtovich contends that Woodland Drive could not have provided consideration because if anything it was the "related party" that paid Courtovich the $4,000,000.  But even assuming it was not Woodland Drive that granted Courtovich the loan, *see supra* p.6 n.2, this argument runs headfirst into the principle that a third party may under certain circumstances provide consideration for contracts between a promisor and promisee.  *Hyman v. Ford Motor Co.*, 142 F. Supp. 2d 735,

742 n.7 (D.S.C. 2001).[4]   In other words, if consideration is sufficient for a contract in other

respects, "[i]t matters not from whom the consideration moves or to whom it goes."  Restatement

(Second) of Contracts § 71(4), cmt. (e) (1981).  The facts and circumstances demonstrate that, at

a minimum, a related entity provided consideration for the business arrangement between

Courtovich and Woodland Drive (though the Court believes it more likely that Woodland Drive,

though not a *formal* corporation at the time, provided Courtovich with the initial investment).

### IV.   Statute of Limitations

Courtovich argues that even if the six counts survive his other arguments, they are all time-

barred under the applicable statute of limitations.[5]

Under District law, the statute of limitations for the tort and breach of contract claims is

three years "from the time the right to maintain the action accrues."  D.C. Code § 12-301(a);

*Murray v. Wells Fargo Home Mortg.*, 953 A.2d 308, 317 (D.C. 2008).  An action generally accrues

when "the plaintiff suffers injury," which involves the impairment of a right or an interest.

*Hillbroom v. PricewaterhouseCoopers LLP*, 17 A.3d 566, 572 (D.C. 2011).  In cases involving an

obscure relationship between the alleged injury and the conduct giving rise to it, the District applies

the "discovery rule" to determine when an action accrues.  *Perry v. Scholar*, 696 F. Supp. 2d 91,

96 (D.D.C. 2010).  An action accrues under the discovery rule when "a plaintiff has knowledge of,

or through the exercise of reasonable diligence should have knowledge of (1) the existence of the

injury, (2) its cause in fact, and (3) some evidence of wrongdoing."  *Ling Yuan Hu v. George

Washington Univ.*, 766 F. Supp. 2d 236, 241 (D.D.C. 2011) (quotation omitted).  The party

---

[4] Relatedly, District law recognizes a third party's authority to sue for breach of contract so long as the third party counts as an intended beneficiary to the arrangement. *Prasad v. George Washington Univ.*, 390 F. Supp. 3d 1, 34 (D.D.C. 2019).  An intended beneficiary need not be named in the contract, rather the intent to involve a third-party beneficiary can be implied based on the circumstances under which the contract was executed.  *Id.*

[5] A statute-of-limitation defense "is properly brought under Civil Rule 12(b)(6)" rather than Civil Rule 12(b)(1).  *Byrne v. Clinton*, 410 F. Supp. 3d 109, 121 (D.D.C. 2019); *Oparaugo v. Watts*, 884 A.2d 63, 73 (D.C. 2005).

asserting the affirmative, statute-of-limitations defense carries the burden unless the face of the complaint clearly bars the claims.  *Oparaugo*, 884 A.2d at 73.

As Courtovich sees it, Woodland Drive complains about allegedly fraudulent statements made in late 2014 and early 2015; a business loan allegedly issued in March 2015; and a deed of trust on the property allegedly obtained in September 2015.  *See* Def.'s Mot. at 16.  Courtovich contends, that, because all those events took place before March 2016, and because Woodland Drive initiated this action in March 2019, the applicable statute of limitations time bars the Complaint.  *Id.*  That argument, however, fails to recognize that Woodland Drive and Courtovich may not have finalized the business arrangement when they signed the security agreement in May 2016.

In particular, D.C. Code § 28-3504 provides that "[i]n an action upon a simple contract, an acknowledgement, or promise, by words only is not sufficient evidence of a new or continuing contract whereby to take the case out of the operation of the statute of limitations . . . unless the acknowledgement, or promise, is in writing, signed by the party chargeable thereby."  In other words, "[a] distinct and unequivocal acknowledgment of a debt as a still subsisting personal obligation constitutes an implied promise to pay it, and takes the contract out of the statute [of limitations]."  *Spellman v. Am. Sec. Bank, N.A.*, 504 A.2d 1119, 1127 (D.C. 1986) (quotation omitted); *Brown v. Lamb*, 414 F.2d 1210, 1211 n.1 (D.C. Cir. 1969) (noting the ancient history of the rule).  To fit within the provision, the acknowledgment must be (1) distinct and unequivocal and (2) it must be made "either to the creditor or to someone acting for him, or to some third person with intent that it be known by and influence the action of the creditor." *P'ship Placements, Inc. v. Landmark Ins. Co.*, 722 A.2d 837, 843 (D.C. 1998) (quotation omitted).  What's more, "[n]o new consideration is necessary for an acknowledgment," because "the unextinguished original

debt remains . . . itself a sufficient consideration for the new promise." *Griffith v. Butler*, 571 A.2d 1161, 1164 (D.C. 1990) (quotation omitted).

Here, the Complaint plausibly alleges that the security agreement counts as an acknowledgement of Courtovich's obligation to provide Woodland Drive a security interest in the purchased property and evidences a promise to fulfill this obligation. Put differently, Courtovich and Woodland Drive signed the security agreement, which acknowledged Courtovich's obligations and promises. The security agreement therefore "[took] the case out of the operation of the statute of limitations."

Assuming that the security agreement was not the event that triggered the start of the statute of limitations, Courtovich argues that the discovery rule cannot salvage Woodland Drive's Complaint from being time-barred. Def.'s Mot. at 16. In Courtovich's view, Woodland Drive was on inquiry notice about possible tort and breach of contract actions as early as September 11, 2015 (the date when Courtovich's deed of trust became a matter of public record). *Id.* Though the Court need not decide the question whether Woodland Drive was on inquiry notice, it is inclined to the Complaint does not establish that it was. Inquiry notice is "that notice which a plaintiff would have possessed after due investigation." *Diamond v. Davis*, 680 A.2d 364, 372 (D.C. 1996). Under District law, the time at which a plaintiff acquires inquiry notice "is a question of fact." *Capitol Servs. Mgmt., Inc. v. Vesta Corp.*, 933 F.3d 784, 791 (D.C. Cir. 2019) (quotation omitted). "The critical question," then, "is whether the plaintiff exercised reasonable diligence under the circumstances in acting or failing to act on whatever information was available to him." *Momenian v. Davidson*, 878 F.3d 381, 388 (D.C. Cir. 2017) (quotation omitted). The Court has

13

trouble concluding that Woodland Drive should have scoured the public records in search of the alleged deed of trust given the facts and circumstances of this particular case.

## V.    Conclusion

For the foregoing reasons, Courtovich's Motion to Dismiss is **DENIED**.  An Order will be entered contemporaneously with this Memorandum Opinion.

It is so **ORDERED**.

DATE:  September 30, 2021

_____
CARL J. NICHOLS
United States District Judge