**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| WOODLAND DRIVE LLC<br><br>Plaintiff,<br><br>v.<br><br>JAMES COURTOVICH<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)  Civil Action No. 1:19-cv-00750-CJN<br>)<br>)<br>)<br>)<br>) |

## <u>PLAINTIFF WOODLAND DRIVE LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT</u>

Plaintiff hereby submits its Memorandum of Points and Authorities in Support of its Motion for Summary Judgment.  Plaintiff requests that his Court grant it's Motion for Summary Judgment and enter such other and further relief as this Court deems just and proper.

Andrew N. Cook, Esq. (DC Bar No. 416199)
K&L GATES LLP
1601 K Street, N.W.
Washington, D.C.  20006
(202) 778-9106
(202) 778-9100 (fax)
Andrew.Cook@KLGates.com

*Counsel for Plaintiff Woodland Drive LLC*

Date:  March 23, 2023

## TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................... 1

STATEMENT OF THE CASE.................................................................................. 1

     I.     Material Facts Not In Dispute.............................................................. 5

ARGUMENT............................................................................................................ 8

     I.     Standard for Summary Judgment......................................................... 8

     II.    Fraud. .................................................................................................. 9

     III.   Summary Judgment Should Be Entered On The Issue Of Defendant's Liability For Breach Of Contract With Plaintiff.................................. 12

          A.    A Valid Contract Existed Between Plaintiff and Defendant. .................. 13

          B.    Plaintiff Performed Its Obligations Under the Contract. ......................... 14

          C.    Courtovich Breached the Contract by Failing to Provide the Interest in SGR or an Interest in the Real Estate. .................................................. 14

          D.    Plaintiff has Been Damaged as a Result of Courtovich's Breach of Contract............................................................................................... 16

     IV.   Wrongful Conversion........................................................................... 16

     V.    Unjust Enrichment. .............................................................................. 18

CONCLUSION....................................................................................................... 19

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*4934, Inc. v. D.C. Dep't of Emp. Servs.*,
605 A.2d 50 (D.C. 1992) ...............................................................................................17

*A Love of Food I, LLC v. Maoz Vegetarian USA, Inc.*,
70 F. Supp. 3d 376 (D.D.C. 2014) ...................................................................................9

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)..........................................................................................................8

*Baltimore v. Dist. of Columbia*,
10 A.3d 1141 (D.C.2011) ...............................................................................................16

*Daisley v. Riggs Bank, N.A.*,
372 F.Supp.2d 61 (D.D.C.2005) ......................................................................................9

*Dixon v. Midland Mortg. Co.*,
719 F. Supp. 2d 53 (D.D.C. 2010) .................................................................................12

*Drug, Inc. v. Hunt*,
168 A. 87 (Del. 1933) .....................................................................................................16

*Eastbanc, Inc. v. Georgetown Park Assocs. II, L.P.*,
940 A.2d 996 (D.C. 2008) ..............................................................................................12

*Farmland Indus., Inc. v. Grain Board of Iraq*,
904 F.2d 732 (D.C.Cir.1990)..........................................................................................15

*Hagan v. United States*,
275 F. Supp. 3d 252 (D.D.C. 2017) .................................................................................8

*Hillyard v. Smither & Mayton, Inc.*,
76 A.2d 166 (D.C.1950) ................................................................................................18

*Holland v. Freeman United Coal Mining Co.*,
574 F. Supp. 2d 116 (D.D.C. 2008)................................................................................14

*Mears Grp., Inc. v. Kiawah Island Util., Inc.*,
372 F. Supp. 3d 363 (D.S.C. 2019), *reconsideration denied*, No. 2:17-CV-
02418-DCN, 2019 WL 2297345 (D.S.C. May 30, 2019)................................................8

*Nemec v. Shrader*,
991 A.2d 1120 (Del. 2010) .............................................................................................17

*Partipilo v. Hallman*,
  156 Ill.App.3d 806, 109 Ill.Dec. 387, 510 N.E.2d 8 (1987) ....................................................18

*Red Lake Band of Chippewa Indians v. U.S. Dep't of Interior*,
  624 F. Supp. 2d 1 (D.D.C. 2009) .............................................................................................16

*Segovia v. Equities First Holdings, LLC*,
  2008 WL 2251218 (Del.Super. May 30, 2008) .........................................................................9

*Shehyn v. Dist. of Columbia*,
  392 A.2d 1008 (D.C.1978) .......................................................................................................16

*Sparks v. Gustafson*,
  750 P.2d 338 (Alaska 1988).....................................................................................................18

*Sununu v. Philippine Airlines, Inc.*,
  638 F. Supp. 2d 35 (D.D.C. 2009) ...........................................................................................18

*Tsintolas Realty Co. v. Mendez*,
  984 A.2d 181 (D.C. 2009) ........................................................................................................12

*United Mine Workers of America 1974 Pension v. Pittston Co.*,
  984 F.2d 469, 473 (D.C. Cir. 1993) .........................................................................................15

*In re United Mine Workers of America Employee Benefit Plans Litigation*,
  782 F.Supp., 658, 664 (D.D.C. 1992) ......................................................................................15

*Van Diest Supply Co. v. Shelby Cnty. State Bank*,
  425 F.3d 437 (7th Cir. 2005) ....................................................................................................16

*VLIW Tech., LLC v. Hewlett-Packard Co.*,
  840 A.2d 606 (Del. 2003) .........................................................................................................12

*Woodruff v. Nat'l Opinion Rsch. Ctr.*,
  505 F. Supp. 2d 138 (D.D.C. 2007) ...........................................................................................9

*Xereas v. Heiss*,
  933 F.Supp.2d 1 (D.D.C.2013) .................................................................................................16

**Other Authorities**

Fed. R. Civ. P. 56(a) ........................................................................................................17, 18

Fed. R. Civ. P. 56(c) .................................................................................................................8

RESTATEMENT OF RESTITUTION § 1 comment a (1937) .....................................................18

**INTRODUCTION**

Plaintiff Woodland Drive LLC ("Plaintiff" or "Woodland") hereby files its Memorandum of Points and Authorities in Support of its Motion for Summary Judgment.  This case involves a transaction proposed by Defendant and structured by his counsel in early 2015.  Plaintiff funded the transaction with $4,000,000.00 and signed the agreements prepared and circulated by Defendant's counsel.  To this day, eight years later, Defendant, having received the $4,000,000.00, used it for his own purposes, and he admits that he has provided Plaintiff nothing in return.

**STATEMENT OF THE CASE**

In late 2014 and early 2015, Defendant Mr. James Courtovich ("Defendant" or "Courtovich") proposed a business opportunity to his friend and business colleague, Mr. Simon Charlton, in which a new lobbying business would be established and a property on Capitol Hill purchased as its headquarters.  Defendant proposed that he would need $4,000,000.00 for the transaction, which would be used to buy a Capitol Hill property for the business and for the company's operations.  In exchange, Defendant would provide a secured interest in the property and equity in the lobbying business.

During January and February 2015, Defendant and Mr. Charlton, who was the CEO of a large family owned company in Saudi Arabia (Ahmad Hamad Algosaibi & Brothers, owned by members of the Algosaibi family), discussed the proposed deal.  The discussions included a decision to structure the transaction through a special purpose entity called Woodland Drive LLC, and this was reflected in the legal documents, which were prepared by Defendant's lawyers and signed by Mr. Charlton on Plaintiff's behalf on the same day funds were wired to Defendant.  Exhibit C, Charlton Dep., pgs. 41-53. Mr. Charlton had arranged Plaintiff's funding through money invested into Plaintiff by family members of his employer, and held at the company's solicitors

account in London. In the words of Mr. Charlton, the money "into Woodland came from an account at our solicitors in London.  The investment was restructured to an offshore entity into a Delaware LLC."  Exhibit C, Charlton Dep., pg. 72.  That offshore entity is Plaintiff.

Defendant hired Jones Day as his legal counsel, and, as noted above, Jones Day prepared a term sheet and draft agreements ("Jones Day Documents") supporting the proposed transaction. The Jones Day Documents reflected the agreed material terms of the deal. In particular, they included a Security Agreement providing that the special purpose entity, a company called "Woodland Drive LLC" (Plaintiff), would loan $4,000,000.00 to the lobbying business, called S.G.R. LLC, Government Relations and Lobbying ("SGR"), half of which would be used to purchase the real estate in Washington, D.C.  The Security Agreement provided further that Defendant would secure the "Real Estate Loan" by providing Woodland Drive LLC with a security interest in the purchased real estate.  The Jones Day Documents also included an Operating Agreement (through which Woodland would be given an interest in SGR), a Member Control Agreement (defining Woodland's relationship with the other members of SGR), and the term sheet setting out repayment terms for the $4,000,000.00.

Mr. Charlton and Defendant had discussed the business opportunity during January and February 2015, during which it was agreed to use Plaintiff as Defendant's counterparty, and on March 9, 2015, after Mr. Charlton received the Jones Day Documents, he caused the $4,000,000.00 to be wired to Defendant. Mr. Charlton signed all of the Jones Day Documents on behalf of Woodland, including the Security Agreement, Member Control Agreement, and Operating Agreement.

Exhibit C, Charlton Dep., pg. 41.  Mr. Charlton had the signed documents sent to Jones Day that same day.  Exhibit A[1], Courtovich Dep., pg. 36-38, Exhibit A.7

Defendant received the funds into a personal account at Wells Fargo, which he had opened for this purpose. Exhibit A, Courtovich Dep., pg. 34, Exhibit A.5; Exhibit B, Clark Deposition, pg. 25-26.  He used a portion of the money to purchase a property at 625 Massachusetts Avenue (the "Real Estate"), he used more of it to renovate the property, and he used the rest of the funds to plug holes in his personal finances and the finances of his other business, Sphere Consulting LLC, including paying several years of delinquent personal federal and state tax liabilities, mortgage payments on his personal residence on Woodland Drive NW and his vacation house in Sullivan's Island, South Carolina.  During this time, he steadfastly refused to sign the Jones Day Documents or any other documents in order to complete the transaction.  He never gave Woodland an interest in SGR and he never gave Woodland a security interest in the Real Estate.  On top of that, six months after receiving the $4,000,000.00 and purchasing the Real Estate, and despite the promises made (those written into the Jones Day Documents and otherwise), he mortgaged the property to Wells Fargo without notifying Plaintiff.  To add insult to injury, not only did Defendant mortgage the property to Wells Fargo Bank without informing Plaintiff, drawing down all of the equity and utilizing the proceeds for personal gain, he then financed the mortgage using Plaintiff's money and not his own.  To this day, Courtovich has repeatedly broken each and every promise

---

[1] Exhibit A is the consolidated transcript of James Courtovich's Deposition. For brevity, it includes only the pages referenced in Plaintiff's Memorandum of Points and Authorities, along with the Cover Page and Certification of the Court Reporter. Exhibits A.1 - A.13 are the exhibits from the deposition referenced in Plaintiff's Memorandum.

he made to Plaintiff and in so doing he has achieved an unjustified windfall of $4,000,000 in the process.

As set out below, the material facts in this case are not in dispute. Defendant proposed terms to Mr. Charlton, had them reduced to writing by his lawyers in the Jones Day Documents, and received the $4,000,000.00 which was arranged by Mr. Charlton in reliance on what had been promised and written into the agreements. Defendant put the money into a personal account created to hold these funds; he used some of the money to buy the Real Estate which he then mortgaged to Wells Fargo and took the proceeds for his own benefit; and he burned through the rest of it over the next two years on expenditures such as delinquent personal tax liabilities, his personal mortgage payments on his house in DC and vacation property in South Carolina, financing the unauthorized mortgage from Wells Fargo. Defendant admits that he did not provide Plaintiff with anything in return, not a security interest in the Real Estate and not an equity interest in SGR. In fact, he repeatedly asserted in his deposition that the Real Estate rightfully belongs to Plaintiff:

> Q. So is it your answer that, yes, Simon was repeatedly asking you for you to --
> A. I can't speak to the number but he did --
> Q. Okay.
> A. -- ask.
> Q. And on Exhibit 17, isn't that one of those instances where he says Woodland has been incorporated but does not yet have a security interest in the property, correct?
> A. Correct. But I always saw it as their home so --
> Q. Repeat that?
> A. But the paperwork --
> Q. Repeat that?
> A. I said I always saw it as their home. So the paperwork was something to do but --
> Q. Okay. What interest did Woodland Drive have in 625 Mass Ave?

A. On paper? I don't really know at this
point. But in spirit, it's theirs.

Exhibit A, Courtovich Dep., pg. 63-64. *See also,* Exhibit A, Courtovich Dep., pg. 76 ("So I never

got involved with the legal aspects of it. The lawyers did that. I always, and still do, see it as their

property. And so whether a document is signed or not, you know, I'm not taking a tow truck and

moving it down the street.").

### I.    Material Facts Not In Dispute

1.       On December, 4, 2014, Courtovich, forwarded an email to Mr. Charlton, his friend

and close business associate, which proposed a business transaction in which monies would be

provided to Courtovich for purposes specified in the email. Exhibit A, Courtovich Dep., pg. 9,

Exhibit A.1. The email details a proposal to purchase real property (with the asset pledged to the

investor) with the balance of monies provided to be used in SGR.  The monies loaned to Cour-

tovich for the real property would include an 8 percent return on investment and a 12 percent return

on investment for monies to be use in SGR.  Courtovich stated that monthly statements would be

provided to the investor and an outside Certified Public Accountant would provide quarterly au-

dited statements and annual full audited statements.

2.       On or about February 14, 2015, per Courtovich's instructions, a Term Sheet and

accompanying documents were forwarded to Mr. Charlton by Courtovich's office.  Exhibit A,

Courtovich Dep., pg. 14-15, Exhibit A.2.  The term sheet defined the investment as a loan in the

amount of $4,000,000.00.  Consistent with his initial proposal, any portion of the loan used for

real estate purposes would be repaid at an 8 percent interest rate.  The remaining part of the loan,

which was to be allocated to SGR's operations, would be repaid at a 12 percent interest rate.  The

"investor" was to receive units in SGR equal to 49 percent of the equity of the Company.

5

3.      On or about February 15, 2015, Courtovich emailed Mr. Charlton that the terms were acceptable and that he would have his lawyers prepare the transaction documents based on the terms of the term sheet.  He stated, "So these terms are fine as they will build all other docs on them." Exhibit A, Courtovich Dep., pg. 19-20, Exhibit A.3.  These documents eventually would become the drafts prepared by his lawyers: the Jones Day Documents.

4.      On or about February 26, 2015, Courtovich's office forwarded drafts of the Jones Day Documents. Exhibit A, Courtovich Dep., pg. 23-24, Exhibit A.4.

5.      On March 3, 2015, Jones Day circulated updated versions of the Jones Day Documents.  The Jones Day Documents identified Woodland Drive LLC as the counterparty and funder for the transaction. Exhibit A, Courtovich Dep., pg. 132; Exhibit A.13.

6.      On or about March 9, 2015, Courtovich acknowledged receipt of the $4,000,000.00. Exhibit A, Courtovich Dep., pg. 34-35, Exhibit A.5. On the same day, Mr. Charlton had the signed Jones Day Documents, which he had signed on behalf of Woodland, sent to Jones Day. Exhibit A, Courtovich Dep., pg. 36-38, Exhibit A.7; pg. 132, Exhibit A.13; Exhibit C, Charlton Dep., pg. 41.

7.      Though repeatedly requested, Courtovich, at the time, did not sign the Jones Day Documents.  On or about May 28, 2015, Courtovich stated that he assumed the documentation had been signed by his comptroller, although he had not in fact given her authority to sign.  Exhibit A, Courtovich Dep., pg. 47-48, Exhibit A.10; Exhibit B, Clark Dep., pg. 100-101.

8.      Courtovich used part of the proceeds from the $4,000,000.00 to purchase the Real Estate.  Exhibit A, Courtovich Dep., pg. 44, Exhibit A.9.

9.      On September 4, 2015, Courtovich executed a Deed of Trust with Wells Fargo, encumbering the Real Estate with a mortgage. Exhibit A, Courtovich Dep., pg. 44, Exhibit A.9.

10.    In May 2016, Courtovich signed the Security Agreement. The Security Agreement includes a covenant from him that he would "keep the Collateral [defined as the Real Estate] free and clear of all claims, liens or encumbrances."  Exhibit A, Courtovich Dep., pg. 34, Exhibit A.6. At this time, Courtovich knew this was a lie because he had already mortgaged the Real Estate to Wells Fargo.

11.    Though Courtovich promised to provide Plaintiff a security interest in the Real Estate, he never did so.  Exhibit A, Courtovich Dep., pg. 60-64, 66-67, 76-77.

12.    Though Courtovich promised to provide an equity interest to Plaintiff in SGR, he never did so. Exhibit A, Courtovich Dep., 132 ("Q. you didn't give any membership interest in SGR to Woodland Drive, correct? A. No.").

13.    Though Courtovich promised to repay the $4,000,000 to Plaintiff, he never did so. Exhibit A, Courtovich Dep., pg. 86.

14.    On or about February 5, 2016, Courtovich forwarded an email promising to "pay 1 million of the investment" but he never did so.  Exhibit A, Courtovich Dep., pg. 52-53, Exhibit A.11.

15.    On or about March 18, 2016, Courtovich forwarded an email promising "the payment of $1 million later this month," but he never made any payment. Exhibit A, Courtovich Dep., pg. 56-57, Exhibit A.12.

16.    The Real Estate purchased by Courtovich is rightfully Plaintiff's:

Q. Okay. What interest did Woodland Drive
have in 625 Mass Ave?
A. On paper? I don't really know at this
point. But in spirit, it's theirs.

Exhibit A, Courtovich Dep., pg. 63-64; *see also,* Exhibit A, Courtovich Dep., pg. 76 ("So I never got involved with the legal aspects of it. The lawyers did that. I always, and still do, see it as their

property. And so whether a document is signed or not, you know, I'm not taking a tow truck and moving it down the street.").

17.    Courtovich used the remainder of the $4,000,000.00 to pay for personal expenses including pre-existing, delinquent personal tax liabilities to the District of Columbia and to the United States (Exhibit B, Clark Dep., pg. 37, 53-54, 62, 64, 66-68, 70-73), mortgage payments for his personal residence on Woodland Drive NW and his vacation property in South Carolina (Exhibit B, Clark Dep., pg. 58-59), for the Wells Fargo mortgage on the Real Estate (Exhibit B, Clark Dep., pg. 64-65) and various other personal expenses (Exhibit B, Clark Dep., pg. 97).

## ARGUMENT

### I.    Standard for Summary Judgment.

No genuine dispute as to any material fact exists relevant to Plaintiff's request for relief. In response to his proposal and in reliance on promises he made, including those drafted into the Jones Day Documents, prepared by his own lawyers, Defendant was wired $4,000,000.00 from Plaintiff and he provided nothing in return. Courtovich broke every promise he made and breached all agreements he had with Plaintiff. Summary judgment shall be granted if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is "no genuine dispute as to any material fact" and that the "movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.*; *see also Hagan v. United States*, 275 F. Supp. 3d 252, 257 (D.D.C. 2017). The Court should view the evidence in the light most favorable to the non-moving party and draw all inferences in its favor. *Id.* at 255; *see also Mears Grp., Inc. v. Kiawah Island Util., Inc.*, 372 F.

Supp. 3d 363, 369–70 (D.S.C. 2019), *reconsideration denied*, No. 2:17-CV-02418-DCN, 2019 WL 2297345 (D.S.C. May 30, 2019).  Under the stated standard, Plaintiff is entitled to judgment in its favor.

## II.    Fraud.

To establish a claim for fraud, a plaintiff must prove: "(1) defendant made a false representation; (2) with knowledge or belief of its falsity or with reckless disregard for the truth; (3) with an intent to induce the plaintiff into acting or refraining from acting; (4) plaintiff reasonably relied upon the misrepresentation; and (5) plaintiff was damaged as a result of the reliance." *Segovia v. Equities First Holdings, LLC*, 2008 WL 2251218, *21 (Del.Super. May 30, 2008).[2] A heightened standard applies on summary judgment motions pertaining to fraud claims: in such cases, the plaintiff must present sufficient evidence to demonstrate a prima facie case of fraud by clear and convincing evidence. *A Love of Food I, LLC v. Maoz Vegetarian USA, Inc.*, 70 F. Supp. 3d 376, 391 (D.D.C. 2014).

Courtovich's actions in this case evidence his intention to induce Plaintiff to wire him millions of dollars and to provide nothing in return.  At the time, and unknown to Plaintiff, Defendant was apparently facing financial difficulties.  He owed hundreds of thousands of dollars to the IRS and DC Office of Tax and Revenue for delinquent taxes, he had a large mortgage payment due

---

[2] The Jones Day Documents state that the law of Delaware shall be the controlling law. However, Plaintiff also meets the burden under the law of the District of Columbia: To prove a common law case of fraud under the law of the District, the plaintiff must show that the defendant: 1) made a false representation; 2) in reference to a material fact; 3) with knowledge of its falsity; 4) with the intent to deceive; 5) that action was taken in reliance upon the representation; and in cases involving commercial contracts negotiated at arm's length there is the further requirement 6) that the defrauded party's reliance be reasonable. *Woodruff v. Nat'l Opinion Rsch. Ctr.*, 505 F. Supp. 2d 138, 142 (D.D.C. 2007)(*citing Osborn v. Haley, U.S.*, January 22, 2007; *Daisley v. Riggs Bank, N.A.*, 372 F.Supp.2d 61 (D.D.C.2005).

9

each month on his personal residence, and he was trying to keep his consulting business, Sphere Consulting, afloat.  He made promises, proposed a deal, had his lawyers at Jones Day write up the agreements (which Plaintiff signed), and he received what he asked for from Plaintiff: $4,000,000.00.  From that day forward, he did nothing in return.  He delayed, ignored, obfuscated, blamed his lawyers, feigned confusion, and all the while burned through the money.

Just two months after receiving the $4,000,000.00 and the signed Jones Day Documents, when asked where his signed documents were, Courtovich professed to having "assumed [the paperwork] had been electronically signed by Kim", his comptroller, to whom he knew he had given no authority to sign the agreements. *Compare:* Exhibit A, Courtovich Dep., pg. 50, A.10, *with* Exhibit B, Clark Dep., pg. 100-101.  Then in March 2016, Defendant admitted delaying his signature in order to deal with a dispute between him and a neighbor, and he asked Woodland "to wait just a few more months."  Exhibit A.12.  But when the pressure from Woodland did not stop, Defendant signed two of the three Jones Day Documents, including the Security Agreement, but he had no intention of performing his obligations as evidenced by the obvious fact that at that time he had already mortgaged the Real Estate to Wells Fargo and therefore had no intention or ability to live up to the express covenant(s) stated in the Security Agreement, including promising not to encumber the Real Estate. Exhibit A.6; Exhibit A.8. In short, he knew he was lying but he did it anyway because he needed to keep up the charade with Plaintiff.

All the while, however, Courtovich was concealing from Plaintiff that, as he put it in his deposition, it was his view that there was no agreement between the parties, even though he accepted the money.  Exhibit A, Courtovich Dep., pg. 31 ("We didn't have an agreement"); ("I think I said I didn't remember. I do know that we did not implement anything in this proposal because it was never agreed upon.").  Meanwhile, he continued to drag Woodland along, and repeatedly

promised Woodland that he would repay his debt, while at the same time using the rest of the money he had received on his personal liabilities and to prop up Sphere Consulting. Exhibit A, Courtovich Dep., pg. 56-58, 67-68, 78-79.

Defendant is therefore a classic fraudster. He exploited an old friendship, proposed a business opportunity and promised that if his friend would organize funding, he would provide security and an ownership stake in a new business. He made it all seem perfectly real, hiring a large, reputable law firm to draw up the documents based on the terms he proposed and in the name of a special purpose entity (Woodland Drive LLC) proposed to act as the funder and counterparty in the deal. Defendant had the documents sent to his friend for signature on behalf of Woodland, and he received signed agreements and a transfer of $4,000,000.00 in return. He then spent the next several years outwardly dragging out the process of completion, making one excuse after another, engaging in blatant deceit by signing an agreement (the Security Agreement) he knew he could not perform after having mortgaged the property to a bank, while promising to make good on his obligations; all the while taking no steps to actually do so and concealing his true position, which he now argues: that the parties had no agreement in the first place. Despite his position that there was no agreement, Defendant knowingly kept the funds that he received based upon false representations of material fact - that the parties had a deal - and the Plaintiff reasonably relied upon them.

Plaintiff signed the documents prepared by Courtovich and sent him $4,000,000.00 dollars, Courtovich accepted and used the funds without ever placing Plaintiff on notice of his apparent position that there was no "agreement." Once Courtovich had the funds, the horse was out of the barn and Plaintiff has been running after the horse ever since.

11

III.    **Summary Judgment Should Be Entered On The Issue Of Defendant's Liability For Breach Of Contract With Plaintiff.**

There is no genuine issue of material fact as to the breach of contract in this case. Courtovich proposed a deal with Plaintiff.  The business agreement was one transaction, as set out in the term sheet and other Jones Day Documents that were prepared on Courtovich's instruction and signed by Plaintiff and partially signed by him.  Courtovich accepted, and spent, $4,000,000.00 of Plaintiff's money and he kept the Real Estate (which he now admits beneficially belongs to Plaintiff.  Nevertheless, he admits to having failed to provide Plaintiff with an interest in SGR or a security interest in the Real Estate. Courtovich's failure to provide what he promised is a breach of agreement.  Plaintiff has been harmed by this breach, namely Plaintiff is out the $4,000,000.00 from the loan to Courtovich, plus interest. Under no interpretation of the facts should Courtovich get away with taking the $4,000,000.00 and providing nothing in return.

"Under Delaware law, a breach of contract claim comprises three elements: (1) the existence of a contract; (2) a breach of an obligation imposed by that contract; and (3) resultant damages." *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003).[3]  Such exists here.

---

[3] The Jones Day Documents state that the law of Delaware shall be the controlling law. However, Plaintiff also meets the burden under the law of the District of Columbia: To prevail on a claim of breach of contract, a party must establish (1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by breach. *Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 187 (D.C. 2009)(*citing San Carlos Irrigation & Drainage District v. United States,* 877 F.2d 957, 959 (Fed.Cir.1989)).

A.  <u>A Valid Contract Existed Between Plaintiff and Defendant.</u>

The facts establish that there is a valid contract between the parties. Under the District's common law, "[a] contract is formed when there is an offer, an acceptance, and valuable consideration" exchanged between the parties. *Dixon v. Midland Mortg. Co.*, 719 F. Supp. 2d 53, 57 (D.D.C. 2010) (citing *Paul v. Howard Univ.*, 754 A.2d 297, 311 (D.C. 2000)). In other words, the parties must "express[ ] an intent to be bound, agree[ ] to all material terms, and assume[ ] mutual obligations sufficient to create an enforceable contract." *Eastbanc, Inc. v. Georgetown Park Assocs. II, L.P.*, 940 A.2d 996, 1004 (D.C. 2008).

There is no dispute as to the material fact of the existence of the contract or its terms. Courtovich forwarded a term sheet to Plaintiff (Exhibit A, Courtovich Dep., 8-9, Exhibit A.1; 15-16, Exhibit A.2), Courtovich agreed to the terms of his term sheet and had his lawyers prepare documents effectuating the terms of the term sheet.  Exhibit A, Courtovich Dep., pg. 20, Exhibit A.3 ("these terms are fine as they will build all other documents on them"); *see also*, Woodland 3361.  As part of and in reliance on the agreement, Plaintiff signed the documents and sent the money.  Exhibit A, Courtovich Dep., Exhibit A.7.  Courtovich never returned the money to Plaintiff.  Exhibit A, Courtovich Dep., pg. 68-69, 78, 80.  Courtovich later signed the Security Agreement and the Member Control Agreement, confirming his assent to the agreed terms, *see* Exhibit A.6, Exhibit A.8, in which he was to use Plaintiff's money to purchase the Real Estate and give a security interest to Plaintiff.  He was also required to provide an equity interest in SGR to Plaintiff. These terms are not in dispute, having plainly been proposed and accepted by the parties and then drafted into the transaction documents (the Jones Day Documents) by Defendant's lawyers.  Exhibit A, Courtovich Dep., 8-9, Exhibit A.1; 15-16, Exhibit A.2; *see also* Signed Member Control Agreement (Exhibit A.8), Security Agreement (Exhibit A.6); Signed Suite of Documents by Woodland Drive (Exhibit A.7).  Courtovich never did any of these things, but he kept and spent

all the money.  He now acknowledges that the Real Estate properly belongs to Plaintiff, the true party in interest in this case.  Exhibit A, Courtovich Dep., 63-64, 76. Further, he admits that he never provided an interest in SGR to Plaintiff. Exhibit A, Courtovich Dep., 132 ("Q. you didn't give any membership interest in SGR to Woodland Drive, correct? A. No.").  Courtovich is clearly in breach of contract.

    B.  <u>Plaintiff Performed Its Obligations Under the Contract.</u>

Under the agreement, Plaintiff was required to fund the transaction with $4,000,000.00. There is no dispute that Plaintiff did so, and Courtovich acknowledged receipt of those funds. Exhibit A, Courtovich Dep., pg. 34, Exhibit A.5.  Thus, there is no dispute as to a material fact as to Plaintiff's compliance with its performance obligations herein.

    C.  <u>Courtovich Breached the Contract by Failing to Provide the Interest in SGR or an Interest in the Real Estate.</u>

Courtovich plainly breached his agreement with Plaintiff.

First, he promised to provide a security interest to Plaintiff in the Real Estate that he purchased with Plaintiff's money.  Defendant has admitted he failed to do it.  Exhibit A, Courtovich Dep., 63-64, 76.  He also promised in the signed Security Agreement to keep the Real Estate unencumbered, but just mere months after purchasing it he mortgaged the property to Wells Fargo, unbeknownst to Plaintiff.  Exhibit A.6.  This is a clear breach of the express terms of the Security Agreement.

Second, Defendant materially breached the Agreement by failing to give Plaintiff an interest in SGR.  From the initial proposal made to Charlton, to the term sheet prepared by Defendant, and the Jones Day Documents prepared by his counsel and provided to Plaintiff, the agreed transaction was centered on joint ownership of SGR.  *See*, Member Control Agreement (Exhibit A.7; Exhibit A.8); Term Sheet (Exhibit A.2**).**  Courtovich admits that he never gave Plaintiff an interest

14

in SGR. Again, a clear breach of the parties' agreement.   Exhibit A, Courtovich Dep., 132 ("Q. you didn't give any membership interest in SGR to Woodland Drive, correct? A. No.").

Interpretation of a clear and unambiguous contractual provision is a question of law for the Court, allowing summary judgment. *Holland v. Freeman United Coal Mining Co.*, 574 F. Supp. 2d 116, 129 (D.D.C. 2008) ("When interpreting contractual provisions, 'the judicial task ... is to give effect to the mutual intent of the parties,' and 'when the language of a contract is clear and unambiguous on its face, a court will assume that the meaning ordinarily ascribed to those words reflects the intention of the parties.')(*citing Mesa Air Group, Inc. v. Dep't of Transp.*, 87 F.3d 498, 503 (D.C.Cir.1996)).

Further, summary judgment in favor of Plaintiff is appropriate even if any portion of the contract were to be considered ambiguous on the interpretive point in dispute. When a contract is susceptible of different meanings, a court looks to extrinsic evidence of the parties' intent to ascertain its meaning. *See, e.g.*, *In re United Mine Workers of America Employee Benefit Plans Litigation*, 782 F.Supp., 658, 664 (D.D.C. 1992). The mere presence of ambiguity, however, does not preclude summary judgment.  *See, e.g., Farmland Indus., Inc. v. Grain Board of Iraq*, 904 F.2d 732, 736 (D.C.Cir.1990) (noting that "if [extrinsic] evidence demonstrates that only one view [of the contract] is reasonable—notwithstanding the ... ambiguity—the court must decide the contract interpretation question as a matter of law"); se*e also United Mine Workers of America 1974 Pension v. Pittston Co.*, 984 F.2d 469, 473 (D.C. Cir. 1993) (noting that "[i]n order to ... avoid summary judgment, the evidence submitted by the non-moving party must show that more than one reasonable interpretation [of the disputed agreement] exists").

Here, the material terms of the parties' agreement are fairly simple and are very clear, from the initial proposal, to the term sheet, and the signed Jones Day Documents, all of which Defendant

prepared and provided to Plaintiff. There is no dispute that Courtovich knowingly received the $4,000,000.00 and provided nothing in return, specifically an equity in SGR (Exhibit A, Courtovich Dep., pg. 131-132) or an interest in the Real Estate, a property which Courtovich admits is beneficially the property of the Plaintiff's (Exhibit A, Courtovich Dep., 63-64, 73). Therefore, Plaintiff is entitled to summary judgment in its favor.

   D.  Plaintiff has Been Damaged as a Result of Courtovich's Breach of Contract.

As a direct and proximate result of Defendant's breach, Plaintiff has suffered both monetary damages and irreparable harm. It has received nothing of value from Courtovich, and has not been repaid any of the $4,000,000.00 or interest that is due from the years since it was transferred to him.

Generally, in cases of breach of a contract, such damages are allowed as will compensate the party aggrieved for all detriment proximately caused thereby. *Red Lake Band of Chippewa Indians v. U.S. Dep't of Interior*, 624 F. Supp. 2d 1, 13 (D.D.C. 2009) ("Stated another way, the measure of damages to be applied in the particular case is irrelevant until the claimant has established the fact of losses that were the natural and proximate result of the breach of contract.")(*citing Willems Indust. Inc. v. United States,* 295 F.2d 822, 831 (Cl.Ct.1962)). Therefore, Plaintiff is entitled to a judgment against Courtovich in an amount of at least $4,000,000.00 plus interest.

   **IV.    Wrongful Conversion.**

Conversion is "any distinct act of dominion wrongfully exerted over the property of another, in denial of [the plaintiff's] right, or inconsistent with it." *Drug, Inc. v. Hunt*, 168 A. 87, 93 (Del. 1933). "The essence of a conversion is a wrongful taking or a wrongful retention of property after a rightful possession." *Shehyn v. Dist. of Columbia*, 392 A.2d 1008, 1012 (D.C.1978). To prove conversion, a plaintiff must show: "(1) a right to the property; (2) an absolute and unconditional right to the immediate possession of the property; (3) a demand for possession; and (4) that

16

the defendant wrongfully and without authorization assumed control, dominion, or ownership of the property." *Van Diest Supply Co. v. Shelby Cnty. State Bank*, 425 F.3d 437, 439 (7th Cir. 2005).[4]

It is undisputed that Courtovich has failed to provide Plaintiff with an interest in the Real Estate. Indeed, he now acknowledges that the Real Estate should be the property of the Plaintiff. Exhibit A, Courtovich Dep., pg. 63-64, 73. It is a property purchased with the $4,000,000.00 from Plaintiff, but all of the benefits and possession of the property have been retained by Defendant. This plainly is "wrongful retention of property." Plaintiff is therefore entitled to summary judgment that Courtovich is liable for wrongful conversion as a matter of law. The same can be said for the balance of the funds provided to Courtovich. He wrongfully converted those funds to his own use in violation of his agreement to the contrary, spending the money without any involvement of Plaintiff on substantial items such as his overdue federal and state personal tax liabilities, his personal mortgage on his house in DC, the mortgage on his vacation property in Sullivan's Island, South Carolina, the financing of the mortgage that he granted to Wells Fargo in violation of the express terms of the Security Agreement, and to prop up his consulting business. *See,* Fed. Rule Civ. Proc. 56(a).

---

[4] The Jones Day Documents state that the law of Delaware shall be the controlling law. However, Plaintiff also meets the burden under the law of the District of Columbia: To state a claim for conversion under District of Columbia law, the plaintiff must allege "(1) an unlawful exercise, (2) of ownership, dominion, or control, (3) over the personal property of another, (4) in denial or repudiation of that person's rights thereto." *Xereas v. Heiss*, 933 F.Supp.2d 1, 6 (D.D.C.2013) (citing cases); s*ee also Baltimore v. Dist. of Columbia*, 10 A.3d 1141, 1155 (D.C.2011).

## V.    Unjust Enrichment.

To establish a claim for unjust enrichment, a plaintiff must prove: "(1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of justification, and (5) the absence of a remedy provided by law." *Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. 2010).[5] When the essential facts are not in dispute, as in this case, the question of whether a quasi-contract should be recognized is one of law. *4934, Inc. v. D.C. Dep't of Emp. Servs.*, 605 A.2d 50, 55 (D.C. 1992)(*citing  Bloomgarden v. Coyer*, 156 U.S.App.D.C. 109, 116, 479 F.2d 201, 208 (1973).

In this case, at a minimum, Courtovich has been unjustly enriched.   Plaintiff had $4,000,000 transferred to him, and he knowingly received the money.  He not only accepted the money, he willingly used it for his own benefit and has not repaid Plaintiff or provided anything else in return.  His egregious acceptance, retention and use of the money without providing anything to Plaintiff is unjust.    Therefore, Courtovich has a duty to make restitution to Plaintiff for the unjust benefit he has retained at Plaintiff's expense. *See*, *Hillyard v. Smither & Mayton, Inc.,* 76 A.2d 166, 167 (D.C.1950); *Sparks v. Gustafson,* 750 P.2d 338, 342 (Alaska 1988); *Partipilo v. Hallman,* 156 Ill.App.3d 806, 810, 109 Ill.Dec. 387, 390, 510 N.E.2d 8, 11 (1987); *see* RESTATEMENT OF RESTITUTION § 1 comment a (1937). Plaintiff is entitled to summary judgment that

---

[5] The Jones Day Documents state that the law of Delaware shall be the controlling law. However, Plaintiff also meets the burden under the law of the District of Columbia: The elements of a claim for unjust enrichment are: "(1) the plaintiff conferred a benefit upon the defendant; (2) the defendant accepted and retained the benefit; and (3) it would be unjust for the defendant not to pay the plaintiff the value of the benefit." *Sununu v. Philippine Airlines, Inc.*, 638 F. Supp. 2d 35, 40 (D.D.C. 2009)(*citing Rapaport v. U.S. Dep't of Treasury,* 59 F.3d 212, 217 (D.C.Cir.1995)).

18

Courtovich is liable to Plaintiff for unjust enrichment as a matter of law, in an amount of at least $4,000,000.00, plus interest. *See,* Fed. Rule Civ. Proc. 56(a).

## CONCLUSION

Courtovich received $4,000,000.00 under terms and conditions dictated by Courtovich and his counsel.  Exhibit A, Courtovich Dep., pg. 14-15, Exhibit A.2; Exhibit A. Courtovich Dep., pg. 34-35, Exhibit A.5.  Courtovich repeatedly promised to pay back Plaintiff but never did. Exhibit A,  Courtovich Dep., pg. 52-53, Exhibit A.11; Exhibit A,  Courtovich Dep., pg. 56-57, Exhibit A.12;  Courtovich promised to give Plaintiff an interest in SGR. Exhibit A, Courtovich Dep., pg. 14-15, Exhibit A.2.  He never did.  Courtovich promised to give Plaintiff an interest in the Real Estate. Exhibit A,  Courtovich Dep., 63-64, 73.  He never did.   Courtovich admits that the Real Estate is properly Plaintiff's though never giving Plaintiff any interest in the Real Estate.  Exhibit A, Courtovich Dep., pg. 63-64; Exhibit A, Courtovich Dep., pg. 76.   For the foregoing reasons, Plaintiff Woodland Drive, LLC respectfully requests that the Court grant its Motion in its entirety, award it $4,000,000.00 plus prejudgment and post judgement interest, costs and such other and further relief as this Court deems just and proper.

Respectfully submitted,

*/s/ Andrew N. Cook*
Andrew N. Cook, Esq. (DC Bar No. 416199)
K&L Gates LLP
1601 K Street, N.W.
Washington, DC  20006
Telephone: (202) 778-9106
Facsimile: (202) 778-9100
Email: Andrew.Cook@KLGates.com

*Counsel for Plaintiff Woodland Drive LLC*

Date:  March 23, 2023

19

**Exhibits**

Exhibit A: Deposition of James Courtovich

     A.1: Courtovich Deposition Exhibit 2

     A.2: Courtovich Deposition Exhibit 4

     A.3: Courtovich Deposition Exhibit 5

     A.4: Courtovich Deposition Exhibit 6

     A.5: Courtovich Deposition Exhibit 8

     A.6: Courtovich Deposition Exhibit 9

     A.7: Courtovich Deposition Exhibit 10

     A.8: Courtovich Deposition Exhibit 11

     A.9: Courtovich Deposition Exhibit 12

     A.10: Courtovich Deposition Exhibit 14

     A.11: Courtovich Deposition Exhibit 15

     A.12: Courtovich Deposition Exhibit 17

     A.13: Courtovich Deposition Exhibit 31

Exhibit B: Deposition of Kimberly Clark

     B.1: Clark Deposition Exhibit 9

Exhibit C: Deposition of Simon Charlton

**CERTIFICATE OF SERVICE**

I certify that on March 23, 2023, I electronically filed the foregoing document with the

Clerk of Court using the CM/ECF system, which will send notification of such filing to counsel of

record:

Russel D. Duncan
Clark Hill PLC
1001 Pennsylvania Avenue, N.W.
Suite 1300 South
Washington, DC 20004
(202) 640-6657
rduncan@clarkhill.com

*Counsel for Defendant James Courtovich*

/s/ Andrew N. Cook
Andrew N. Cook

*Counsel for Plaintiff Woodland Drive*
*LLC*

21