**UNITED STATES DISTRICT COURT**
**FOR THE**
**DISTRICT OF COLUMBIA**



COURT REPORTING

LEGAL VIDEOGRAPHY

VIDEOCONFERENCING

TRIAL PRESENTATION

MOCK JURY SERVICES

LEGAL TRANSCRIPTION

COPYING AND SCANNING

LANGUAGE INTERPRETERS







**(800) 528-3335**
**NAEGELIUSA.COM**

Woodland Drive LLC

      Plaintiff

v.             Civil Action No. 1:19-cv-00750-CJN

James Courtovich

      Defendant

_____

**REMOTE DEPOSITION BY VIDEOCONFERENCE**

**KIMBERLY CLARK**

**TAKEN ON**
**FRIDAY, FEBRUARY 24, 2023**
**9:03 A.M.**

**WINGATE BY WINDHAM LAFAYETTE AIRPORT**
**702 EAST KALISTE SALOON ROAD**
**LAFAYETTE, LOUISIANA  70508**

Exhibit B

CTC80001034 is your email back to Jim, again, just expressing your concern about you don't want to get into legal trouble having SGR and Woodland tangled up, correct?

A.    Correct.

Q.    See that language?

A.    The latest email on June 23rd --

Q.    Right.

A.    -- 2016.

Q.    And this, again, was related to the payment of the Delaware tax bill, correct?

A.    Correct.

Q.    Okay.  And do you know how that was ultimately -- the Delaware tax bill was ultimately paid; do you know -- if you remember?

A.    I believe it was ultimately paid out of either Sphere or SGR's funds.

Q.    Yeah.

MR. COOK:  Off the record for just a minute.

THE REPORTER:  Okay.  Stand by.  We are off the record at 9:42 a.m.

(WHEREUPON, a recess was taken.)

THE REPORTER:  All right.  We are back on the record at 9:47 a.m.

took the tax money from."

So is he referring to the account 3972 that you took the --

A.   Yes.

Q.   -- 686,000?

A.   Yes.

Q.   So can you talk to us about the 686,000, what that money was needed for?  It -- it --

A.   Well, I have to check the sheet.

Q.   Yeah.  If you look at the sheet, it -- it -- it talks about the 2014 cash return?

A.   Yes.

Q.   Okay.  Is that what that money was needed for, to pay the IRS that money?

A.   Yes.

Q.   Okay.  And -- and did -- and did -- and that's what that money was used for, to pay the IRS, correct, the 686,000?

A.   Correct.

Q.   So that -- that money ran through the -- that 686,000 went into the Sphere 5316 account, correct?

A.   Correct.

Q.   Yeah.  And whose tax liability was that for the 686?

NAEGELI
DEPOSITION & TRIAL

CELEBRATING 40 YEARS IN BUSINESS

(800)528-3335
NAEGELIUSA.COM    Exhibit B

A.    James Courtovich.

Q.    Jim -- Jim Courtovich?

A.    Jim Courtovich.

Q.    Okay.  Thank you.

Okay.  Same exhibit, Exhibit 9, if you could turn to page 815 of Exhibit 9 and identify for us what that document is and what you're purporting to do there.

A.    I'm emailing Jim to let him know that these bills need to be paid and that I'm transferring $200,000 out of the account to pay those bills.  I'm transferring them to his personal checking account.

Q.    I see.  So you're -- you were taking monies out of 3972 to pay the -- the -- the obligations that are listed on page 815 of Exhibit 9.

A.    Yes.

Q.    Great.  Okay.  Terrific.

I see on that page one of the payments you're making is a $13,000 payment to the IRS; you see that for 13,000?

A.    I see it.

Q.    And was that a Jim Courtovich tax liability?

A.    Just I -- I think there was something going on with somebody in his family.  I think that's what the lawyer's name was.  I can't remember.

Q.    Okay.  All right.  Let's turn to the next page, which is 817 of Exhibit 9.  And then you're transferring out $20,000 from the 3972 Woodland Drive account.  And this is for mortgage and credit-card payments, correct?

A.    Correct.

Q.    Okay.  All right.  And turning to page 818 of Exhibit 9, and here you're sending an email to Jim telling Jim, "Actually, I'm going to" -- so you -- you send him a note on March 31, 2017, an email.

You say "To cover the upcoming South -- "SC" is South Carolina?  That's the South Carolina house?

A.    Yes.

Q.    Is that correct?  Okay.  Thank you.

You're asking him, "Is Jeff going to pay in to help with household bills?  I can send you a summary of what you spent if you like."

And then you respond -- or you send an additional email saying, "Actually, I'm going to take the money from your other Wells Fargo account.

NAEGELI
DEPOSITION & TRIAL        CELEBRATING 40 YEARS IN BUSINESS        (800)528-3335
NAEGELIUSA.COM        Exhibit B

The Sphere account is kind of low."  Right?

So he had -- Jim had an obligation to pay monies on the South Carolina house, the mortgage, correct?

A.   Yes.

Q.   And you were trying to figure out where to take the money from?

A.   Correct.

Q.   To pay for that mortgage obligation, correct?

A.   Yes.

Q.   Okay.  Great.  And you took it out of the 3972 account?

A.   Yes.

Q.   All right.  Okay.  Who own -- do you know who owned the South Carolina property?

A.   Yes.

Q.   Who's that?

A.   It was jointly owned by Jim and Jeff.

Q.   Okay.  All right.  So you referenced the fact that the Sphere bank account is kind of low. Why would -- did you often take monies from the Sphere account?  Did you get authorization -- or did Jim tell you to take monies from the Sphere account to pay for the South Carolina mortgage?

NAEGELI
DEPOSITION & TRIAL

CELEBRATING 40 YEARS IN BUSINESS

(800)528-3335
NAEGELIUSA.COM    Exhibit B

3972 to pay the Woodland Drive mortgage, correct?

A.    Yes.

Q.    Okay.  On page 820 of Exhibit 9, there are a couple of emails from you to Mr. Courtovich.  Can you take some time to review those and identify that -- that -- those emails for us?

A.    Okay.

Q.    Before we talk about page 820, can you go to page 821?  I'm wondering is if this is part of the same email trail.  And look at -- look at your email on page 821 of Exhibit 9.

What is -- what are you addressing there in that email?

A.    I'm letting Jim know how much the balance is for the 2014 tax return.

Q.    Got it.  And so you're telling him "We need to pay the balance due on the 2014 tax return, about 690K." Right?  That ultimately becomes the 686, correct?

A.    Yes.

Q.    Yes.  Okay.  Great.  And you say, "...we don't have enough cash flow in your Wells Fargo and the Sphere bank accounts to pull the 690-," correct?

A.    Yes.

Q.    All right.  Then you say, "Once we've paid

the 2014, Mary will call the IRS and get more time for the remaining 1 million while we work on getting a loan." Correct?

A. I'm not sure what your question is.

Q. That's what that's -- that's what your email says?

A. Yes. Correct.

Q. Okay. All right. Can you talk to us about what you're addressing there? You're talking about an additional $1 million obligation to the IRS?

A. Yes.

Q. Okay. And that's Mr. Courtovich's obligation?

A. Yes.

Q. Okay. Great. All right. And you talk about getting a loan. Can you talk -- can you elucidate on that?

A. From what I can recall, Mr. Courtovich had talked about getting a bridge loan, or some type of loan or line of credit, to cover the $1 million obligation from this email.

Q. Okay.

A. And that turned into -- what I thought was this bridge loan or line of credit was actually the

refinancing of 625 Massachusetts Avenue.

Q.    Right.  Right.  So he -- so he refinanced **625 to pay off this IRS obligation; is that correct, the $1 million?**

A.    That was the intent.  I don't remember exactly. There was some confusion on my part because I thought that we were getting the bridge loan or line of credit to cover the tax, but I didn't realize it was going to be part of this mortgage for 625 Mass.

Q.    Okay.

A.    That's why I was calling it refi line of credit, because I was confused.

Q.    **Okay.  But you -- your understanding is that, ultimately, he --**

A.    The money was supposed to be used for paying off that IRS liability.

Q.    **Okay.  The refinance --**

A.    Mm-hmm.

Q.    **-- of 625 Mass, correct?**

A.    Well, it ended up that that's what that was.

Q.    **Yeah.**

A.    Yeah.

Q.    **On your -- on your -- on the -- on Exhibit**

NAEGELI
DEPOSITION & TRIAL

CELEBRATING 40 YEARS IN BUSINESS

(800)528-3335
NAEGELIUSA.COM    Exhibit B

9, the spreadsheet that identifies -- which is page 2 of Exhibit 9, there's no reference of any of that refinance money off of the 625 Mass refinance coming back into account number 3972; is that correct?

A.   Yes.

Q.   Okay.  Great.  Do you know -- do you know if any of the monies on the refinance were ever paid back to Woodland Drive?

A.   When you say "Woodland Drive," are you referring to the LLC?

Q.   Yes.

A.   I do not know of monies going back to Woodland Drive, LLC.

Q.   Okay.  Let's turn to page 820 of Exhibit 9.

And this is a series of emails -- well, the first -- at the bottom of page 820, it says, "Everyone" at Sphere Consulting.  Who does that refer to?  Just everybody in the office?

A.   Yes.  I had an "everyone" email account so that I wouldn't have to type in everyone's name.

Q.   Got it.  Okay.  And you were just telling them about issues coming up because of the papal visit, correct?

A.   Correct.

NAEGELI
DEPOSITION & TRIAL

CELEBRATING 40 YEARS IN BUSINESS

(800)528-3335
NAEGELIUSA.COM   Exhibit B

Q.    Okay.  Got it.  Okay.

All right.  So the email above that is between you and Mr. Courtovich.  And you're writing to Mr. Courtovich, and you're telling him that you need to send out the 2014 tax payment; is that correct?

A.    Yes.

Q.    Okay.  Great.

And so his email above that was, "Have him put it in the Sphere account today."

So is that all related to the 686- that we were talking about previously, the 686,000?

A.    Yes.

Q.    Okay.  Great.  And Mr. Courtovich is telling you take the money from 3972 and put it in the Sphere account.

And you say, "Will do."?

A.    Yes.

Q.    Okay.  And that's to pay Mr. Courtovich -- his tax liability.

A.    Yes.

Q.    On Exhibit 9, page 823, there is another one of your emails to Mr. Courtovich, correct?

A.    Yes.

Q.    And in this email, you're telling Mr.

NAEGELI
DEPOSITION & TRIAL    CELEBRATING 40 YEARS IN BUSINESS    (800)528-3335
NAEGELIUSA.COM    Exhibit B

Courtovich, I'm transferring 200,000 from account number 3972 to cover the below expenses"; is that correct?

A.   Yes.

Q.   Okay.  Great.  One of the payments you referenced in your email to Mr. Courtovich is -- yeah, to Mr. Courtovich -- is that $12,551.63 payment, federal monthly income tax payments, 2011, '13, and '15; is that correct?

A.   Yes.

Q.   Okay.  What were the -- what -- what do those payments pertain to?

A.   June's tax liability.

Q.   Tax liabilities for those three years -- '11, '13, and '15?

A.   Yes.

Q.   Okay.  Great.  So he was on some sort of monthly payment plan to the IRS?

A.   Yes.

Q.   Okay.  Great.  All right.  At the bottom of the page, you reference "payroll and taxes, $57,033.07."

Again, we're on page 823 of Exhibit 9.

What payroll and what taxes are you paying, if you -- if you remember, out of that

$57,033.07?

A.   I would believe it was for Sphere and SGR payroll on the payroll taxes.

Q.   Okay.  Got it.

Yeah.  The -- the first -- sorry -- the first entry on page 823, the first listing of expenses is a car expense, a lease, I guess, for a Range Rover, correct?

A.   Yes.

Q.   Is that Jim's personal car, if you know?

A.   When you say "personal car," in what context do you mean?

Q.   Is -- is it -- was it for Jim to drive? Was it anybody else's car?

A.   It was for Jim to drive.

Q.   Okay.  And was it a Sphere car?  Was it an SGR car, or do you know whose name the car was in?

A.   I would -- I want to say it was under Sphere, on Sphere's books --

Q.   Okay.

A.   -- the expense.

Q.   All right.  All right.  When you -- when you reference your payroll and taxes down below on page 823, the $57,033.07 payroll and taxes, did you have one payroll ledger for Sphere and a separate

NAEGELI
DEPOSITION & TRIAL

CELEBRATING 40 YEARS IN BUSINESS

(800)528-3335
NAEGELIUSA.COM    Exhibit B

THE REPORTER:  We are back on the record at 10:38 a.m.

BY MR. COOK:

Q.  Great.  Ms. Clark, you had mentioned before that -- that you keep a separate ledger for SGR and -- and for Sphere, correct?

A.  Yes.

Q.  All right.  Has anybody asked you to produce those ledgers in this litigation?

A.  Well, when you're saying ledgers, do you mean the financial statements in its entirety?

Q.  Yeah.  I guess similar to what -- what you've done with -- for 3972.

A.  Not that I can recall.

Q.  All right.  And how about -- how about the tax returns for both of those entities, Sphere and SGR?

A.  I want to make sure I understand your question.

Q.  Yeah, yeah, yeah.  So has anybody asked you to produce for us in this litigation the SGR, Sphere, Mr. Courtovich's tax returns from '14 to '20?

A.  Yes.

Q.  Okay.  Great.  Did you produce those?

NAEGELI DEPOSITION & TRIAL     CELEBRATING 40 YEARS IN BUSINESS     (800)528-3335     NAEGELIUSA.COM     Exhibit B

A.   Yes.

Q.   Okay.  I assume you gave them to Mr. Duncan?

A.   Yes.

Q.   Okay.  Terrific.

But you're -- if you -- do you -- my question pertains to the ledger, right, where the -- trying to ascertain whether the Sphere or SGR ledgers have been produced as well.

A.   I'm not sure, because we've been going at this for a while.

Q.   Yeah.

A.   So my memory -- I can't recall.

Q.   All right.  Well, I'll circle back with Mr. Duncan.

A.   Thanks.

Q.   How hard is -- would it be for you to produce -- to print out something like that?

A.   Not hard at all.

Q.   Okay.  Well, we're going to Mr. Duncan --

A.   Sure.

Q.   -- that you do so.  Okay.

All right.  We're back on -- back to Exhibit 9. And I think we're at page 824.

And this is another instance where you're

NAEGELI
DEPOSITION & TRIAL

CELEBRATING
40
YEARS IN BUSINESS

(800)528-3335
NAEGELIUSA.COM    Exhibit B

telling Mr. Courtovich that you have certain bills to pay, correct?

A.    Yes.

Q.    And that you're pulling $200,000 out of 3972 to -- to make those payments, correct?

A.    Correct.

Q.    Okay.  Thanks.

And then I see in -- I see in that same tranche of -- of payment disclosures on page 824 that you're -- you've got another payroll and taxes amount of $57,033.07, correct?

A.    Yes.

Q.    Okay.  And that's -- and that's a continuing monthly payment allocation --

A.    Yes.

Q.    -- correct?  Okay.

And then I also see on that same page federal monthly, it looks like, income tax payments for 2013 and 2015, correct?

A.    Yes.

Q.    Okay.  And that, again, is in the amount of 12,551.63, correct?

A.    Yes.

Q.    Okay.  Great.

Turn to page 825.  Can you identify what

that is telling us?

A.    That is another email where I'm letting Jim know I got the bills that need to be paid and that I was transferring 100,000 over to Sphere to pay the bills.

Q.    On -- yeah, on page 825 of Exhibit 9, you reference C4.

A.    Mm-hmm.

Q.    And that references back to your -- to the spreadsheet, second page of Exhibit 9, correct?

A.    Yes.  That was the intention.

Q.    Okay.  And again, on this page, you have the same amount -- it's page 825 -- the same amount for payroll taxes, $57,033.07, correct?

A.    Yes.

Q.    All right.  And another 12,551.63 for the income taxes for Mr. Courtovich, correct?

A.    Yes.

Q.    Let's turn to page 827 of Exhibit 9.

And here you're telling Mr. Courtovich that you're transferring 200,000 from account 3792, correct -- 3972 to -- to Sphere for bills.  And is what's shown on SC5, you identify it as C5, but you don't identify what particular you're paying; is that correct?

correct, on a regular basis?  It looks like you're -- to make payroll, you're having to pull from different locations, correct --

A.    Correct.

Q.    -- different accounts --

A.    Correct.

Q.    -- right?  So you could be pulling from an SGR account, you could be pulling from a Sphere account, or you could be pulling from a joint account, correct?

A.    Correct.

Q.    Yeah.  And in some instances, you were pulling from 3972 account to make the payroll, correct?

A.    Yes.

Q.    And also to pay some of Jim's personal expenses, correct?

A.    Yes.

Q.    Now, the last tranche of -- of Wells Fargo statements we'll go through pertain to the joint account 1111.  And we'll mark this Exhibit 13, okay?

        (WHEREUPON, Exhibit 13 was marked for identification.)

BY MR. COOK:

Q.    You -- so I've handed you what's been

NAEGELI DEPOSITION & TRIAL     CELEBRATING 40 YEARS IN BUSINESS     (800)528-3335     NAEGELIUSA.COM     Exhibit B

CERTIFICATE

I, Greg Salina, do hereby certify that I reported all proceedings adduced in the foregoing matter and that the foregoing transcript pages constitutes a full, true and accurate record of said proceedings to the best of my ability.

I further certify that I am neither related to counsel or any party to the proceedings nor have any interest in the outcome of the proceedings.

IN WITNESS HEREOF, I have hereunto set my hand this 17th day of March, 2023.


_____

Greg Salina

Exhibit B